Seyfarth Shaw LLP
Jon Meer (SBN 144389)
E-mail:  jmeer@seyfarth.com
Leo Li (SBN 293539)
E-mail:  lli@seyfarth.com
Romtin Parvaresh (SBN 301554)
E-mail:  rparvaresh@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant
CARTER'S RETAIL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN CHRISTENSEN, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CARTER'S RETAIL, INC., a Corporation; and Does 1 through 50, Inclusive,<br><br>        Defendants. | Case No.  8:20-cv-776<br><br>**DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL**<br><br>[Orange County Superior Court Case No. 30-2020-01138792-CU-OE-CXC]<br><br>Complaint Filed:  March 16, 2020<br>Trial Date:          None Set |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF NATHAN CHRISTENSEN AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Carter's Retail, Inc. ("Defendant") files this Notice of Removal, (1) asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, and (2) asserting original federal question jurisdiction pursuant to 28 U.S.C. § 1331, to effectuate the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California for the County of Orange, to the United States District Court for the Central District of California. This Court has original jurisdiction over the action pursuant to CAFA and federal question jurisdiction for the following reasons:

## I. BACKGROUND

1. On March 16, 2020, Plaintiff Nathan Christensen ("Plaintiff") filed a class action and representative action complaint in the Superior Court of State of California for the County of Orange, titled "*NATHAN CHRISTENSEN, an individual, on behalf of himself and on behalf of all persons similarly situated vs. CARTER'S RETAIL, INC., a Corporation; and Does 1 through 50, Inclusive*," Case No. 30-2020-01138792-CU-OE-CXC ("Complaint"). The Complaint asserts nine causes of action for: (1) Unfair Competition In Violation of California Business & Professions Code §§ 17200, *et seq*.; (2) Failure to Pay Overtime Wages In Violation of California Labor Code §§ 510, *et seq*.; (3) Failure to Pay Minimum Wages In Violation of California Labor Code §§ 1194, 1197, and 1197.1; (4) Failure to Provide Required Meal Periods In Violation of California Labor Code §§ 226.7 and 512; (5) Failure to Provide Require Rest Periods In Violation of California Labor Code §§ 226.7 and 512; (6) Failure to Reimburse Employees for Required Expenses In Violation of California Labor Code § 2802; (7) Failure to Provide Accurate Itemized Wage Statements In Violation of California Labor Code § 226; (8) Failure to Provide Seating In Violation of California Labor Code § 1198 and

California Code of Regulations, Title 8, Section 11070(14); and (9) Violation of the Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698, *et seq.* (Ex. A—Complaint, ¶¶ 49–123.)

2.      On March 23, 2020, Defendant's registered agent for service of process in California received, via process server, a packet containing the Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment; Alternative Dispute Resolution Information Package; and Guidelines for Complex Civil Departments.  A true and correct copy of the packet received by Defendant is attached hereto as **Exhibit A**.

3.      On April 16, 2020, Defendant filed its Answer to Plaintiff's Complaint in the Superior Court of State of California for the County of Orange.  A true and correct copy of the Answer filed to Plaintiff's Complaint is attached hereto as **Exhibit B**[1].

4.      Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibit A through Exhibit B, in this action prior to filing this Notice of Removal.

## II.      TIMELINESS OF REMOVAL

5.      Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. §1446(b)(1).

6.      The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

---

[1] As of the filing of this Notice, a conformed copy of the Answer is not yet available.

7.      Defendant's Notice of Removal is timely because it is filed on April 20, 2020, which is within 30 days of service of the Summons and Complaint on March 23, 2020.  28 U.S.C. § 1446(b); Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint . . . .").

## III.     REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

8.      Under the CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  As set forth below, each of these three requirements are met and thus this action is properly removable, pursuant to 28 U.S.C. § 1441(a).

### A.     The Class Action Includes Approximately 7,973 Putative Class Members.

9.      A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

10.     Here, Plaintiff defines the proposed class to include "all individuals who are or previously were employed by Defendant in California and classified as non-exempt employees . . . at any time during the period beginning on the date four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court[.]" (Ex. A—Complaint, ¶ 4.)  Based on the filing date of the Complaint on March 16, 2020, the proposed class period covers the time period of **March 16, 2016 to the present**.

11.    Based on the proposed class definition, **there are approximately 7,973 current and former non-exempt employees in the proposed class** as of January 31, 2020.  (Declaration of Susan Mimnaugh in Support of Defendant's Notice of Removal ("Mimnaugh Decl."), ¶ 11.)  Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

### B.    Plaintiff And Defendant Are Minimally Diverse.

12.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).

13.    A party's citizenship is determined at the time the lawsuit was filed.  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

14.    In the instant case, Plaintiff is a citizen of a state (California) that is different from the states of citizenship of Defendant (Delaware and Georgia).

### 1.    Plaintiff Is A Citizen Of California.

15.    For diversity purposes, a natural person's state citizenship is determined by that person's domicile—*i.e.*, "[one's] permanent home, where [that person] resides with the intention to remain or to which [that person] intends to return."  *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed").

16.    In this case, Plaintiff alleges that he "has been employed by Defendant in California as a non-exempt employee . . . since November of 2015."  (Ex. A—Complaint, ¶ 3.)

17.    Additionally, Plaintiff provided Defendant with his home address during the course of his employment for purposes of his personnel file, payroll checks, and tax

withholdings.  (Mimnaugh Decl., ¶ 6.)  Defendant's review of Plaintiff's personnel file reveals that Plaintiff resides in Anaheim, California. (*Id.*)

18.    Plaintiff's intent to remain domiciled in California also is evident from the fact that he brought this lawsuit against Defendant in the Superior Court of the State of California for the County of Orange.  Therefore, Plaintiff was at all relevant times, and still is, a citizen and resident of the State of California.

### 2.    Defendant Is Not A Citizen Of California.

19.    Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. § 1332(c)(1).

20.    For diversity purposes, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21.    Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Mimnaugh Decl., ¶ 7.)  Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

22.    Further, as shown below, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Georgia. (Mimnaugh Decl., ¶ 8.)  Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of Georgia.

23.    The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis.  *Id*. at 92–93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

1090, 1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

24.     Under the "nerve center" test, Georgia emerges as Defendant's principal place of business.  Defendant's corporate headquarters are located in Atlanta, Georgia where Defendant's high level officers direct, control, and coordinate its activities. (Mimnaugh Decl., ¶ 8.)  Defendant's high level corporate officers maintain offices in Atlanta, and many of Defendant's corporate level functions are performed in the Atlanta office.  (*Id.*)  Additionally, many of Defendant's executive and administrative functions, including corporate finance and accounting, are directed from the  Atlanta headquarters. (*Id.* at ¶ 9.)

25.     Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the States of Delaware and Georgia.  28 U.S.C. § 1332(c)(1).

26.     Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Georgia, minimal diversity exists for purposes of CAFA.

### 3.     The Citizenship Of Doe Defendants Should Be Disregarded.

27.     The other defendants named in the Complaint are merely fictitious parties identified as "Does 1 through 50" whose citizenship shall be disregarded for purposes of this removal.  28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

28.     Thus, the existence of "Does 1 through 50" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006) (rule applied in CAFA removal).

6

**C.** **The Amount In Controversy Is More Than $12 Million, Which Exceeds The $5 Million Statutory Threshold Under CAFA**

29. CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

30. In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.

31. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42–43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

32. Even if, as here, a class action complaint alleges the amount in controversy is below the statutory minimum (Ex. A—Complaint, ¶¶ 4, 27, 39), the removing defendant still only needs to prove by a **preponderance of the evidence** that the amount in controversy exceeds that minimum. *Ramos v. MOOG Inc.*, 2020 WL 969023, at *3 (C.D. Cal. Feb. 27, 2020) (applying preponderance of evidence standard to deny motion to remand where plaintiff's class action complaint makes conclusory allegation that the "aggregate claim is under five million dollars"); *see also Dart*, 135 S. Ct. at 553–54

7

("Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the **preponderance of the evidence**, that the amount in controversy exceeds the jurisdictional threshold") (emphasis added, internal alterations omitted); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *accord Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.  In light of *Standard Fire*, this rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million.") (citations omitted); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that under the "preponderance of the evidence" standard, "the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

    33.    To satisfy this standard, the "defendants' notice of removal need include **only a plausible allegation** that the amount in controversy exceeds the jurisdictional threshold."  *Dart*, 135 S. Ct. at 554 (emphasis added); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount'") (emphasis added).

34.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

35.     For purposes of ascertaining the amount in controversy, "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

36.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

37.     If a plaintiff asserts statutory violations, **the court must assume that the violation rate is 100%** unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

9

*Muniz*, 2007 WL 1302504, at \*4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at \*5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at \*3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, \*4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

38.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at \*2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the

plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

39.     Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendants' alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to provide accurate and complete itemized wage statements, failure to provide suitable seating, unreimbursed business expenses, and unfair business practices.  (Ex. A—Complaint.)  Plaintiff also seeks civil penalties under PAGA (Ex. A—Complaint, ¶¶ 118–123), and attorneys' fees and costs.  (Ex. A—Complaint, Prayer for Relief.)

40.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds **$12 million**, even under very conservative violation rates. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and solely for purposes of this Notice of Removal, that liability is established.

### 1.     The Second And Third Causes Of Action For Unpaid Overtime And Minimum Wage: The Amount In Controversy Exceeds $719,000 Based On Only 10 Minutes Of Unpaid Overtime Per Employee Per Week

41.     Plaintiff's Second and Third Causes of Action seeks recovery for unpaid overtime and unpaid minimum wages, respectively.  (Ex. A—Complaint, ¶¶ 64–79 [overtime]; ¶¶ 80–93 [minimum wages].)  In the Prayer For Relief, Plaintiff further seeks "an order requiring Defendant to pay all wages and all sums unlawfully withheld from compensation due to Plaintiff and the other members . . . ." (Prayer For Relief, ¶ 1(C); *see also* Ex. A—Complaint, ¶ 61 (alleging that Plaintiff and class members are entitled to have "restore[d] to them the money and property which Defendant has acquired, or of which [they] have been deprived, . . . including earned but unpaid wages for all overtime worked".)

42.     Plaintiff alleges that "Plaintiff and other California Class Members forfeited minimum wage and overtime compensation by regularly working without their time being accurately recorded and without compensation…."  (Ex. A—Complaint, ¶ 9.) Specifically, Plaintiff alleges that "Defendant required Plaintiff to work while clocked out during what was supposed to be Plaintiff's off-duty meal break."  (*Id.*)

43.     Plaintiff also alleges that there is a "uniform and systematic practice of requiring Plaintiff and California Class Members to perform work off the clock after clocking out" because "Defendant, as a condition of employment, requires these employees to wait for and submit to loss prevention inspections after clocking out for meal breaks and at the end of each scheduled shift for which Defendant does not provide compensation for time spent waiting for and submitting to Defendant's loss prevention

12

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

inspections off the clock." (Ex. A—Complaint, ¶10.) Plaintiff alleges that the "off-the-clock" inspections are pursuant to "Defendant's uniform policy and practice." (*Id.*)

44. In recent the decision of *Rodriguez v. Nike Retail Serv. Inc.*, 928 F.3d 810, 818 (9th Cir. 2019), the Ninth Circuit noted that bag checks for employees in a retail store ranged from "zero seconds and several minutes," with "employees frequently exited [the stores] multiple times per day." *Id.* Based on the observation in *Rodriguez*, if employees in the instant case left the store twice each day—once for their meal period and once when their shift ended—then employees would incur two minutes of time off-the-clock each day. If employees worked five days per week, they would incur 10 minutes off the clock each day.

45. Although Defendant denies Plaintiff's allegations or that he or the putative class are entitled to any relief, it is reasonable to assume that employees worked, at a minimum, 10 minutes of unpaid time per week. Unpaid time of 10 minutes is just a couple of minutes of alleged time off the clock. As the Ninth Circuit and numerous district courts have held, an estimate of at least 10 minutes per class member per week is appropriate in light of Plaintiff's allegation that Defendant has a "uniform policy and practice" of wage abuse, including overtime violations. *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032,

13

1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

46.    The statute of limitations for recovery for unpaid wages under California Labor Code §§ 510 and 1194 pay is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation").  Accordingly, the proposed class period for the second and third causes of action is from **March 16, 2016 until the present**.

47.    As stated above, during the relevant time period identified in the Complaint, Defendant employed approximately 7,973 non-exempt hourly employees in California, who worked a total of approximately 343,210 workweeks, based on their dates of employment.  (Mimnaugh Decl., ¶ 11.)  The average hourly rate of pay for these individuals is approximately $12.57 per hour as of January 31, 2020.  (*Id.* at ¶ 12.)

48.    Accordingly, the reasonable estimate of the amount in controversy for Plaintiff's unpaid minimum wage claim is **$719,039.33** [($12.57/hour * 0.16667 hours (10 minutes) per week * 343,210 workweeks)].

49.    Defendant's calculation for Plaintiff's minimum wage claim is very conservative.  Although Plaintiff alleges a variety reasons for requiring unpaid work off the clock, Defendant limited its calculation to time spent in connection with loss prevention inspections.  Although an employee working an eight-hour shift may exit a

store four times—once for the first rest period, once for the meal period, once for the second rest period, and once at the end of the shift—Defendant estimated only two exits per day.

50.    Defendant's calculation for Plaintiff's minimum wage claim is also very conservative, in that the calculation does not even consider the 50% premium necessary for overtime wages.  If Defendant were to treat the time as all overtime, then the potential amount in controversy for Plaintiff's minimum wage and overtime wage claims would be $1,078,559.00 [($12.57/hour * 0.16667 hours (10 minutes) per week *343,210 workweeks * 1.5 OT premium)].

### 2.    The Fourth Cause Of Action For Unpaid Meal Period Premiums: The Amount In Controversy Exceeds $2 Million Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

51.    For his fourth cause of action, Plaintiff alleges that "in accordance with Defendant's corporate policy and practice[,]" Plaintiff and the putative class members "were from time to time unable to take off duty meal breaks and were not fully relieved of duty for meal periods."  (Ex. A—Complaint, ¶ 14; *see also* Ex. A—Complaint, ¶¶ 24, 95.)  According to the Complaint, Plaintiff and the members "were from time to time required to perform work as ordered by Defendant for more than five (5) hours during a shift without receiving an off-duty meal  break[,]" and "from time to time . . . were required by Defendant to work ten (10) hours of work" without receiving "a second off-duty meal period[.]"  (Ex. A—Complaint, ¶ 14; *see also* Ex. A—Complaint, ¶¶ 24, 95.)  Plaintiff further alleges that Defendant violated California Labor Code § 226.7 by failing to compensate Plaintiff and the members who were denied a meal period "one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided."  (Ex. A—Complaint, ¶ 96.)

52.    In his Prayer For Relief, Plaintiff seeks to recover from Defendant "[m]eal and rest period compensation pursuant to California Labor Code Section 226.7 and the applicable IWC Wage Order."  (Prayer For Relief, ¶ 2(C).)

53.     California Labor Code § 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

54.     The statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq.  See Falk*, 237 Cal. App. 4th at 1462, n.12 (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for the fourth cause of action is from **March 16, 2016 until the present**.

55.     Defendant pays its non-exempt employees every two weeks.  (Mimnaugh Decl., ¶ 12.)  Accordingly, there are 26 pay periods per year.  Given that the 7,973 putative class members worked a total of approximately 343,210 workweeks, there are approximately 171,605 pay periods for the proposed class period (343,210 / 2).  (*Id.* at ¶ 11.)

56.     Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per pay period for the alleged non-

16

provision of meal periods, the amount in controversy on this claim would equal no less than **$2,157,074.85** ($12.57/hour * 171,605 pay periods).

57.     Defendant's numbers are very conservative.  For purposes of showing the amount in controversy for alleged meal period violations, Defendant has assumed only one meal period violation during each two-week pay period.  In other words, if an employee worked 10 days during a two-week pay period, Defendant has calculated only a single meal period violation during that pay period.

### 3.     The Fifth Cause Of Action For Unpaid Rest Period Premiums: The Amount In Controversy Exceeds $2 Million Based On Only One Hour Of Premium Pay Per Employee Per Pay Period

58.     For his fifth cause of action, Plaintiff alleges that "Defendant's policies, practices, and procedures failed to provide mandatory meal and/or rest breaks" to Plaintiff and the putative class members.  (Ex. A—Complaint, ¶ 56; *see also* Ex. A—Complaint, ¶ 24 (alleging that Plaintiff "forfeited . . . rest breaks without additional compensation and in accordance with Defendant's corporate policy and practice".) Plaintiff further alleges that he and the putative class members "were from time to time also required to work in excess of four (4) hours without being provided ten (10) minute rest periods" and that they were "periodically denied their proper rest periods by Defendant and Defendant's managers."  (Ex. A—Complaint, ¶¶ 15, 99.)

59.     In addition, Plaintiff alleges that as a result of Defendant's policies and practices, he and the members "were also not provided with one hour wages in lieu" of rest breaks.  (Ex. A—Complaint, ¶¶ 15, 99.)  Plaintiff further alleges that Defendant violated California Labor Code § 226.7 by failing to compensate Plaintiff and the members who were denied a rest period "one additional hour of compensation at each employee's regular rate of pay for each workday that a rest period was not provided." (Ex. A—Complaint, ¶ 100.)

60.     In his Prayer For Relief, Plaintiff seeks to recover from Defendant "[m]eal and rest period compensation pursuant to California Labor Code Section 226.7 and the applicable IWC Wage Order."  (Prayer For Relief, ¶ 2(C).)

17

61.     Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012). California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon*, 2010 WL 1753194 at *4.

62.     The statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years. *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). The statute of limitations is extended to four years when a plaintiff also pursues an action for restitution under the California Business and Professions Code § 17200, *et seq. See Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the fifth cause of action is from **March 16, 2016 until the present**.

63.     Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per pay period for the alleged non-provision of rest periods, the amount in controversy on this claim would equal no less than **$2,157,074.85** ($12.57/hour * 171,605 pay periods)

64.     Defendant's numbers are very conservative. For purposes of showing the amount in controversy for alleged rest period violations, Defendant has assumed only one rest period violation during each two-week pay period. In other words, if an employee worked 10 days during a two-week pay period, Defendant has calculated only a single rest period violation during that pay period.

### 4. The Sixth Cause Of Action For Unreimbursed Business Expenses: The Amount In Controversy Exceeds $792,000

65.    For his sixth cause of action, Plaintiff alleges that Defendant "failed to reimburse and indemnify Plaintiff and the other California Class Members for required business expenses incurred by the Plaintiff and other California Class Members in direct consequence of discharging their duties on behalf of Defendant." (Ex. A—Complaint, ¶ 16.)  Specifically, Plaintiff alleges that "Defendant's policy, practice, and procedure is not to reimburse Plaintiff and the other California Labor Sub-Class members for expenses resulting from using their personal cellular phones for Defendant within the course and scope of their employment for Defendant."  (Ex. A—Complaint, ¶ 104.)  Plaintiff seeks to recover from Defendant "reimbursement for expenditures or losses incurred by [Plaintiff] and the California Labor Sub-Class Members in the discharge of their job duties for Defendant . . . ."  (Ex. A—Complaint, ¶ 105.)

66.    Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a).

67.    The statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years. Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the fifth cause of action is from **March 16, 2016 until the present**

68.    During the limitations period of March 16, 2016 to present, there are approximately 7,973 putative class members, who worked a total of approximately 343,210 weeks worked, based on their hire and termination dates. (Mimnaugh Decl., ¶ 11.) That amount of weeks worked equates to approximately 79,202 total months worked (343,210 weeks worked * (12 months per year/52 weeks per year)).

69.     Assuming that each putative class member during the limitations period may recover cell phone expenses in the amount of $10 per month, the amount in controversy for the unpaid business expenses would equal no less than **$792,020.00** ($10/month * 79,202 months).

70.     Defendant's numbers are very conservative.  For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions, from different providers.  According to the U.S. Bureau of Labor Statistics, the average annual cell phone services charge is $1,188, or approximately $99 per month.  U.S. Bureau of Labor Statistics, Table 1300, p. 4, *available at* https://www.bls.gov/cex/2018/combined/age.pdf. Assuming that employees use their cell phones for business purposes for only 10% of the time during each month, their expenses would be approximately $10 per month.

### 5.     The Seventh Cause Of Action For Non-Compliant Wage Statements: The Amount In Controversy Exceeds $4 Million

71.     For his seventh cause of action, Plaintiff alleges that "Defendant also failed to provide Plaintiff and other members of the California Class with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned and correct amount of time worked."  (Ex. A—Complaint, ¶ 22; *see also* Ex. A—Complaint, ¶ 108.)  Based on this alleged violation, Plaintiff claims that he and other class members "may elect to recover liquidated damages of fifty dollars ($50.00) for the initial pay period in which the violation occurred, and one hundred dollars ($100.00) for each violation in a subsequent pay period . . . in an amount according to proof at the time of trial (but in no event more than four thousand dollars ($4,000.00) for Plaintiff and each respective member of the California Labor Sub-Class herein)."  (Ex. A—Complaint, ¶ 109.)

72.     Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134

Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiff filed his Complaint on March 16, 2020, the statutory period for the statutory penalty claim under California Labor Code § 226 runs from **March 16, 2019 to the present.**

73.     During the limitations period of March 16, 2019 to the present, there are approximately 3,319 putative class members with 84,248 total weeks worked, based on their dates of employment. (Mimnaugh Decl., ¶ 13.)  Based on the number of weeks worked, Defendant issued approximately 42,124 wage statements to these employees (84,248 / 2).  When including a $50 penalty for the initial wage statement and $100 for each subsequent wage statement (up to a maximum of $4,000 for each employee), the amount in controversy on this claim would equal no less than **$4,046,450.00** ([$100 * 42,124 pay periods] - [$50 * 3,319 employees]).[2]

### 6.     Attorneys' Fees

74.     Plaintiff also seeks attorneys' fees.  (Ex. A—Complaint, Prayer for Relief, ¶ 4(c).)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010–11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

---

[2] Plaintiff's eighth cause of action is for the alleged failure to provide suitable seating. (Ex. A—Complaint, ¶¶ 110–17.)  However, the amount in controversy for the eighth cause of action is zero because there is no private right of action and the only potential recovery is through PAGA.  *Home Depot, U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210, 218 (2010) ("an employer's failure to provide seating under [the applicable] Wage Order … is unlawful under [California Labor Code] section 1198, but no civil penalty for such conduct is 'specifically provided' in section in 1198 or elsewhere; thus "violations of this type are subject to the default remedy stated in section 2699, subdivision (f) [of PAGA]").

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

75.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010–11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

76.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

77.     Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases."  *Arias*, 936 F.3d at 922.

78.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019)

22

(finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78–84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16–18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

79.     Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$2,467,914.76** in this case, which is 25% of the potential recovery of the claims alleged in the Complaint—$719,039.33 (unpaid minimum wages) + $2,157,074.85 (unpaid meal premiums) + $2,157,074.85 (unpaid rest premiums) + $4,046,450.00 (wage statement claim) + $792,020.00 (reimbursement claim).

### 7.     The Total Aggregate Amount In Controversy Exceeds $12 Million.

80.     Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class for all asserted claims is approximately **$12,339,573.79**:

| Cause of Action | Amount in Controversy Based on the Allegations of the Complaint |
| --- | --- |
| Unpaid Minimum Wages | $719,039.33 (ten minutes of unpaid wages per employee per week) |
| Unpaid Meal Period Premiums | $2,157,074.85 (one hour of premium pay per employee per pay period) |
| Unpaid Rest Period Premiums | $2,157,074.85 (one hour of premium pay per employee per pay period) |
| Non-Compliant Wage Statements | $4,046,450.00 (based on 42,124 wage statements issued) |
| Unreimbursed Business Expenses | $792,020.00 ($10 per month per employee for 79,202 months) |
| Attorneys' Fees and Costs | $2,467,914.76 (based on 25% of the potential recovery) |
| **Total** | **$12,339,573.79** |

81.     Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

82.     Because minimal diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

83.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. § 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. § 1367(a).

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   REMOVAL UNDER FEDERAL QUESTION

### A.   This Court Has Federal Question Jurisdiction Based On The Fair Labor Standards Act.

84.   A case presents a "federal question" if a claim "'aris[es] under the Constitution, laws, or treaties of the United States.'" *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

85.   Plaintiff's Complaint presents an original federal question under the Fair Labor Standards Act ("FLSA"), a federal law, which independently confers this Court with original jurisdiction over this action.  (Ex. A—Complaint, ¶ 34(c).)

86.   Plaintiff specifically alleges under his first cause of action that Defendant "violat[ed] the Fair Labor Standards Act ('FLSA'), 29 U.S.C. §§ 201, *et seq*., by failing to pay the correct federal overtime wages to the Plaintiff and the members of the California Class as legally required by the FLSA, and retaining the unpaid federal overtime to the benefit of Defendant[.]"  (Ex. A—Complaint, ¶ 34(c) (emphasis added).) In the Prayer for Relief, Plaintiff seeks to recover "all wages an sums unlawfully withheld from compensation due to Plaintiff and the other members of the California Class[.]"  (Prayer For Relief, ¶ 1(C).)

87.   This FLSA claim therefore presents a federal question over which this Court has original jurisdiction. 28 U.S.C. § 1331; *see also Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1074 n.1 (9th Cir. 2016) ("Because [plaintiff] pleaded a claim under the FLSA, a federal law, the district court also had federal question jurisdiction [over alleged 'violations of California employment laws']"); *Helmer v. Brandano*, 875 F.2d 318 (9th Cir. 1989) ("district court had federal question jurisdiction over [plaintiff's] first action under 28 U.S.C. § 1331 (1982) and the Fair Labor Standards Act"); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 859 (9th Cir. 1979) ("Both the claim under the FLSA and the claim based on a breach of the collective bargaining agreement present federal questions"); *Helton v. Factor 5, Inc.*, 2014 WL 4243540, at *1 (N.D. Cal. Aug. 27, 2014) ("instant action was commenced in the

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

Superior Court of California, County of Marin. After the Plaintiffs filed an amended complaint adding federal claims under the Fair Labor Standards Act ('FLSA'), 29 U.S.C. § 216, the individual Defendants removed the action to this Court on the basis of federal question jurisdiction").

### B. This Court Has Supplemental Jurisdiction Over Plaintiff's Related State Law Claims.

88.    Plaintiff asserts the remainder of his claims under the California Labor Code, the California Business and Professions Code, and California's PAGA statute. Plaintiff's claims under California law arise from, relate to, and emanate from the same alleged employment relationship between Plaintiff and Defendant that is the subject of the federal question claim, and raise the same issue as to whether Plaintiff and the putative class were properly compensated for overtime due to alleged off-the-clock work, properly compensated for overtime pay, properly compensated for meal and rest premiums at the correct rates, provided accurate and itemized wage statements, and provided suitable seating.

89.    Therefore, the claims are so related that they form part of the same case or controversy as the FLSA claim.  Accordingly, this Court has supplemental jurisdiction over Plaintiff's claims under California law pursuant to 28 U.S.C. § 1367(a). *See Geanta v. Compass Health, Inc.*, 673 F. App'x 768, 769 (9th Cir. 2017) (reversing dismissal of related state law claims on grounds that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Garcia v. NRI USA, LLC*, 2018 WL 2315962, at *3 (C.D. Cal. May 21, 2018) (supplemental jurisdiction proper where complaint alleged FLSA claim and "state-law claims under the California Labor Code and Unfair Competition Law"; "a court can exercise supplemental jurisdiction over state-law wage-and-hour class claims when original jurisdiction is present due to an FLSA claim. The Court finds that the state-law claims do not 'predominate' over the federal claim, that those claims do not present novel or complex

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

issues of state law, and that 'exceptional circumstances' warranting dismissal do not exist. Therefore, the Court exercises jurisdiction over Plaintiff's state-law claims"); *Jarrell v. Amerigas Propane, Inc.*, 2017 WL 8314661, at *1 (N.D. Cal. Aug. 4, 2017) ("Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).  The Court has supplemental jurisdiction over Plaintiff's state-law claims" for meal period, rest period, overtime, minimum wage, and wage statement violations); *Lowenthal v. Quicklegal, Inc.*, 2016 WL 5462499, at *5 (N.D. Cal. Sept. 28, 2016) ("court has federal-question jurisdiction over [plaintiff's] FLSA claim and supplemental jurisdiction over the others — all of which relate to his alleged employment and non-payment, and thus are 'so related' to his FLSA claim"); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1058 (C.D. Cal. 2014) (noting "the court's federal question jurisdiction based on [plaintiff's] FLSA claim" and supplemental jurisdiction for claims under California Labor Code §§ 201, 202, 226, 226.7, 512, and 2802); *Hernandez v. Martinez*, 2014 WL 3962647, at *3 (N.D. Cal. Aug. 13, 2014) ("Plaintiffs assert claims under the FLSA and various California wage and hour statutes. . . . [A] FLSA cause of action raises a federal question, and the Court properly may exercise subject matter jurisdiction over the FLSA cause of action. Because the state law claims arise out of the same factual allegations as the FLSA cause of action, the Court exercises supplemental jurisdiction over those claims"); *Milton v. TruePosition, Inc.*, 2009 WL 323036, at *1 (N.D. Cal. Feb. 9, 2009) ("The complaint alleges one claim for relief under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and five claims for relief under various California laws. . . . Plaintiffs allege violations of various employment laws, claiming that defendant failed to pay plaintiffs for all the hours they worked, failed to pay overtime, and failed to provide meal and rest periods. . . . [T]here is federal question jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331, and that the Court has . . . supplemental jurisdiction under 28 U.S.C. § 1367").

90.    This Court retains original jurisdiction over the entire civil action here— indeed, only one claim is needed for original jurisdiction for an entire civil action.  *See*

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 559 (2005) ("[i]f the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint"); *Saxe v. Cast & Crew Payroll, LLC*, 2015 WL 4648041, at *8 (C.D. Cal. Aug. 4, 2015) (same).

## V.   VENUE

91.    Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c).  This action originally was brought in the Superior Court of the State of California for the County of Orange, which is located within the Central District of California.  28 U.S.C. § 84(c).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

92.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Orange as required under 28 U.S.C. § 1446(d).

## VI.   NOTICE TO STATE COURT AND TO PLAINTIFF

93.    Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California for the County of Orange.  The Notice of Removal is concurrently being served on all parties.

## VII.  PRAYER FOR REMOVAL

94.    WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California.

///

///

///

///

///

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

DATED: April 20, 2020                              SEYFARTH SHAW LLP


By:  */s/ Romtin Parvaresh*
                                                  Jon D. Meer
                                                  Leo Q. Li
                                                  Romtin Parvaresh
                                                  Attorneys for Defendant
                                                  CARTER'S RETAIL, INC.

29