**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
  Piya Mukherjee (State Bar #274217)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN CHRISTENSEN, an individual, on behalf of himself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br>vs.<br><br>CARTER'S RETAIL, INC.; and Does 1 through 50, Inclusive,<br><br>Defendants. | CASE No. **8:20-cv-00776 JLS (KESx)**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:        August 20, 2021<br>Time:        10:30 a.m.<br><br>Judge:       Hon. Josephine L. Staton<br>Dept.:       10A<br><br>Date Filed:  March 16, 2020<br>Trial Date:  N/A |

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   1.  Defendant's Centralized Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   2.  Loss Prevention Inspections Were Performed Off the Clock . . . . . . . . 6

   3.  Security Checks Were Required Before Meal Periods . . . . . . . . . . . . . 9

III. LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   1.  Substantive Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.  California Law Requires All Non-Exempt Employees Be Paid for All Hours Spent under the Control of the Employer . . 11

      B.  California Law Requires All Non-Exempt Employees to Be Completely Relieved of Duties for Rest Periods . . . . . . . . . . . 12

   2.  Class Certification Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   1.  Numerosity and Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   2.  Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.  The Security Check Class Raises Common Questions . . . . . . . . 15

      B.  The Rest Period Class Raises Common Questions . . . . . . . . . . 18

   3.  Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   4.  Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   5.  Common Issues of Fact and Law Predominance . . . . . . . . . . . . . . . . . 21

      A.  Security Check Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      B.  Rest Period Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

   6.  A Class Action Is the Superior Means of Achieving Justice . . . . . . . . 24

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

*Arredondo v. Delano Farms Co.*,
  301 F.R.D. 493, 545 (E.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Augustus v. ABM Security Services, Inc.*,
  2 Cal.5th 257 (2016),
  *as modified on denial of reh'g* (Mar. 15, 2017)  . . . . . . . . . . . 3, 12, 13, 18, 23

*Baghdasarian v. Amazon.com, Inc.*,
  258 F.R.D. 383, (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bibo v. Fed. Express, Inc.*,
  2009 U.S. Dist. LEXIS 37597 (N.D. Cal. Apr. 21, 2009) . . . . . . . . . . . . . . . . 2

*Bono Enterprises, Inc. v. Bradshaw*,
  32 Cal.App.4th 968 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brinker Restaurant Corp. v. Sup. Ct.*,
  53 Cal.4th 1004, 1021 & 1033 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*Campbell v. PricewaterhouseCoopers, LLP*,
  253 F.R.D. 586, 605 (E.D. Cal. 2008),
  *adhered to*, 287 F.R.D. 615 (E.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Chavez v. Converse, Inc.*,
  15-cv-03746 NC, [Doc. No. 89] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Donohue v. AMN Services, LLC*,
  2021 Cal. LEXIS 1294 ( Feb. 25, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571, 613 (9th Cir. 2010) (en banc)  . . . . . . . . . . . . . . . . . . . . . 19, 20

*El Pollo Loco Wage and Hour Cases*, JCCP 4957 . . . . . . . . . . . . . . . . . . . . . . . . 23

*Frlekin v. Apple, Inc*.
  8 Cal.5th 1038 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 19, 21

*Frlekin v. Apple Inc.*,
  309 F.R.D. 518 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 22, 23, 25

*Frlekin v. Apple, Inc*.
  979 F.3d 639, 644 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 16, 17

*Hanlon v. Chrystler Corp,*
  150 F.3d 1011, 1020 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kurihara v. Best Buy Co.*,
  2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007) . . . . . . . . . . . . 2, 25

*Lao v. H&M Hennes & Mauritz, L.P.*,
  2018 U.S. Dist. LEXIS 133969 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . 2, 15, 16

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507, 512 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Leyva v. Medline Industries Inc.*,
   716 F.3d 510 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*McKenzie v. Fed. Exp. Corp.*,
   275 F.R.D. 290, 302 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   311 F.R.D. 590 (C.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Narouz v. Charter Commc'ns, LLC*,
   591 F.3d 1261, 1266 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Otsuka v. Polo Ralph Lauren Co.*,
   251 F.R.D. 439, 447-48 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rodriguez v. Nike Retail Services*,
   2016 U.S. Dist. LEXIS 110961 (N.D. Cal. Aug. 19, 2016) . . . . . . . . . . . . . 16

*Rodriguez v. Nike Retail Servs.*,
   2016 U.S. Dist. LEXIS 110961 (N.D. Cal. Aug. 19, 2016) . . . . . . . . . . . 2, 17

*Sav-On Drug Stores, Inc. v. Superior Court*,
   34 Cal.4th 319, 340 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Scott-George v. PVH Corporation*,
   2015 U.S. Dist. LEXIS 157410  (E.D. Cal. 2015) (bag checks) . . . . . . . . . . . 2

*Taylor v. FedEx Freight, Inc.*,
   2015 U.S. Dist. LEXIS 64177, *44 (E.D. Cal. May 15, 2015) . . . . . . . . . . . 22

*Tidewater Marine Western, Inc. v. Bradshaw*,
   14 Cal.4th 557(1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Troester v. Starbucks Corp.*,
   5 Cal. 5th 829 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 345, 131 S. Ct. 2541 (2011) . . . . . . . . . . . . . . . 13, 14, 15, 19, 20

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180, 1192 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## **STATUTES**

Business & Professions Code § 17200, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# FEDERAL RULES

## Federal Rules of Civil Procedure

Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 25

Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23, 24, 25

Rule 23(g)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# OTHER AUTHORITIES

Division of Labor Standards Enforcement
   https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm . . . . . . . . . . . . . . . . . . . . . 13

IWC Wage Order No. 7-2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

# I.    INTRODUCTION

Plaintiff NATHAN CHRISTENSEN ("Plaintiff") respectfully moves to certify a Security Check class of all non-exempt individuals who were employed by Defendant CARTER'S RETAIL, INC. ("Defendant") in retail locations in California from March 16, 2016 to September 24, 2018. Certification of the Security Check class is sought to pursue claims for restitution pursuant to the California Labor Code and the California Business & Professions Code § 17200, *et seq.* (the "UCL") based on Defendant's failure to pay for time spent waiting for security checks and premium pay for meal periods that were cut short as a result of waiting for security checks.

Defendant required all California retail store employees to undergo Security Checks before leaving the store for breaks and at the end of their shifts. The employees exiting the store—regardless of whether they were carrying a bag, a jacket or just a phone in their pocket—were uniformly required to participate in the Security Check. Significantly, Defendant failed to put in place a policy or practice mandating that these security checks must be performed while on the clock until September 24, 2018 (the "Security Check Class Period").  Until then, there was no policy stating that Security Checks were considered by the employer to be on the clock time or practice to pay for Security Check time. Defendant actually trained employees to ensure that employees were clocked out *before* they submitted to a Security Check. Under these uniform facts, the predominant common question is whether Defendant is liable for failing to pay for off the clock waiting time during Security Checks and whether Defendant owes premiums for meal periods cut short by the Security Checks.

The California Supreme Court has defined "hours worked" that must be compensated as time that the "employer knows or has reason to believe that [the employee] is continuing to work[.]"  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000). Defendant's uniform policy and practice of requiring Security Checks, promulgating a written policy that failed to specify Security Checks are on the clock, and training employees to conduct Security Checks off the clock raises a predominant

common question of liability as to whether Defendant should have known that the time in Security Checks was not being compensated which is eminently suited for class certification based on several District Court decisions granting class certification of similar claims in California. *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015)(Whether the employer's policies actually required off the clock bag checks was common to the class and capable of resolution by common proof); *Rodriguez v. Nike Retail Servs.*, 2016 U.S. Dist. LEXIS 110961 (N.D. Cal. Aug. 19, 2016); *Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007)(court granted certification in spite of concerns raised regarding variations across stores and employees); *Bibo v. Fed. Express, Inc.*, 2009 U.S. Dist. LEXIS 37597 (N.D. Cal. Apr. 21, 2009); *Otsuka v. Polo Ralph Lauren Co.*, 251 F.R.D. 439, 447-48 (N.D. Cal. 2008)(off the clock inspection claim certified based on common questions); *Lao v. H&M Hennes & Mauritz, L.P.*, 2018 U.S. Dist. LEXIS 133969  (N.D. Cal. 2018) (granting class certification where a company-wide policy requiring employees to undergo security checks before leaving the store for rest breaks and at the end of their shifts); *Scott-George v. PVH Corporation*, 2015 U.S. Dist. LEXIS 157410  (E.D. Cal. 2015) (bag checks);  *Frlekin v. Apple Inc.*, 309 F.R.D. 518 (N.D. Cal. 2015).

In *Frlekin v. Apple Inc.*, **the court granted class certification where Apple required all those employees "who left the premises with a bag" to submit to a security inspection.**[1] 309 F.R.D. 518, 519 (N.D. Cal. 2015).  Following the granting of class certification, the California Supreme Court issued a ruling in *Frlekin v. Apple, Inc*. 8 Cal.5th 1038 (2020) to decide whether "time spent on the employer's premises waiting for, and undergoing, required exit searches of packages, bags, or personal technology devices…[is] compensable as 'hours worked' within the meaning of Wage Order 7?" *Id.* at 1042. **The California Supreme Court concluded that "[the] plaintiffs' time spent on [the defendant's] premises waiting for, and undergoing, mandatory exit searches**

---

[1]  Emphasis added and internal citations omitted unless otherwise stated.

**... is compensable as 'hours worked.'"** *Id.* **at 1058**. Thereafter, the Ninth Circuit reversed and remanded  "with instructions to (1) grant Plaintiffs' motion for summary judgment on the issue of whether time spent by class members waiting for and undergoing exit searches pursuant to [the defendant's policies] is compensable as 'hours worked' under California law, and (2) determine the remedy to be afforded to individual class members." *Frlekin v. Apple, Inc*. 979 F.3d 639, 644 (9th Cir. 2020).  Judgment has since been granted in the plaintiff's favor, there and the case is now set to proceed to trial where the next steps will be the distribution of the notices to the class members who will submit claim forms whereby Apple will have an opportunity to challenge those claim forms as part of the process.  (Notice of Lodgement, <u>Exhibit A</u> (Minute Entry 3/3/21, *Frlekin v. Apple, Inc.*, 3:13-cv-03451-WHA [Doc. No. 400])).  Class certification of Plaintiff's Security Check claim, here, should also be certified and proceed to trial based on the standard of liability pronounced by the California Supreme Court and the trial plan adopted as manageable by the District Court in *Frlekin*.

Plaintiff also respectfully moves for class certification of the claim that Defendant's requirement that employees may not leave the premises of the retail store during rest periods unless permission is granted violated the California Labor Code's requirement that employees must be relieved of all duties for rest periods. Plaintiff moves to certify a Rest Break class defined as all non-exempt individuals who were employed by Defendant in retail locations in California from March 16, 2016 to the present ("Rest Break Class Period").  In *Augustus v. ABM Security Services, Inc.,* 2 Cal.5th 257 (2016), *as modified on denial of reh'g* (Mar. 15, 2017) (*Augustus*), the California Supreme Court stated that employers must provide employees with off-duty rest periods, which the court defined as "time during which an employee is relieved from all work-related duties and free from employer control." *Augustus,* 2 Cal.5th at 264. Here, the predominantly common question is whether Defendant's requirement that employees ask permission to leave the premises unlawfully discouraged a rest period completely free of duties.

The California Supreme Court has acknowledged that wage and hour disputes should, given the "remedial" nature of California's labor laws, routinely proceed as class actions. *See, e.g., Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 340 (2004) ("California's overtime laws are remedial and are to be construed so as to promote employee protection. ... this state has a public policy which encourages the use of the class action device ... the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation."). The California Supreme Court has also found that claims based on uniform employee policies are particularly well-suited for class treatment. *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1021 & 1033 (2012)("[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment").

Here, the Security Check and Rest Break claims are based uniform policies and practices applied to all members of the classes. As a result, common issues predominate over any individualized issues and class treatment is the superior way to determine the liability that Plaintiff alleges. Every other class certification element namely: numerosity, typicality, commonality and adequacy of representation are also satisfied. Accordingly, Plaintiff respectfully submits that class certification should be granted.

## II.     FACTUAL BACKGROUND

### 1.     Defendant's Centralized Business

Defendant is a major American designer and marketer of children's apparel and products.  (ECF No. 18, ¶ 2).  Defendant operates multiple retail locations across California where Defendant sells baby and children clothes and products (Exhibit 1,[2] 30(b)(6) Depo., 18:7-23, 21:1-6; Exhibit 2, Defendant's California locations). During the

---

[2] All numerical exhibits are attached to the Declaration of Piya Mukherjee, filed and served herewith.

1  Class Period, Defendant employed approximately 7,967 non-exempt employees who
2  worked in California at Defendant's retail locations.   (Def. Supp. Response to
3  Interrogatory No. 14, Set One, Exhibit 3). Defendant produced payroll and time records
4  for 798 individuals or approximately 10% of the putative class members. (Declaration
5  of Jarrett Gorlick, ¶¶ 6-9, filed and served herewith). Based on an extrapolation of the
6  sample, the Security Check class includes all California non-exempt employees who
7  worked in a retail location from March 16, 2016 until September 24, 2018 which is
8  approximately 7,680 individuals. (*Id*. at ¶¶ 6-12). The Security Check Class Members
9  who received at least one (1) meal period during the Security Check Class Period
10 numbers 6,770 employees. (*Id*.)   Additionally, the non-exempt employees who had at
11 least one shift lasting more than 3.5 hours in length during the Rest Period Class Period
12 is approximately 7,830 employees. (*Id*.)

13      During the Class Period, the Class Members were required to fully comply with
14 Defendant's comprehensive written policies and procedures:

15      ...[W]e strive for a **hundred percent compliance on our policies**....
16 (Exhibit 1, 30(b)(6) Depo., 22:15-23).

17      Failure to fully comply with Defendant's policies and procedures would have led
18 to consequences up to and including termination of employment. (*Id*. at 31:4-12; Exhibit
19 4, Employee Handbook at Christensen_00004).

20      Plaintiff has been employed by and worked under Defendant's uniform policies
21 and practices from November 15, 2015 to present. (Exhibit 4, Christensen Decl., ¶ 2).
22 Plaintiff worked primarily at Defendant's Anaheim location, but has also spent time
23 working at Defendant's California retail locations in Brea, La Habra, Anaheim Hills, and
24 Tustin. (*Id*. at ¶ 4).  At each location, Plaintiff has been required "to adhere at all times
25 to the same written policies and standard operating procedures...." (*Id*.).

26      Defendant uniformly distributed six (6) common iterations of Defendant's
27 "Timekeeping" policies.  (Exhibits 5-10, Timekeeping Policies; *see also* Exhibit 1,
28 30(b)(6) Depo., 78:15-81:4, 83:6-85:18). The "Timekeeping-California Stores" policies

were the only documents outlining Defendant's timekeeping policies applicable to the Class Members. (Exhibit 1, 30(b)(6) Depo., 85:3-12). Failure to strictly adhere to these timekeeping policies could result in disciplinary action up to and including termination of employment. (Exhibits 5-10, Timekeeping Policies; *see also* Exhibit 1, 30(b)(6) Depo., 78:15-81:4, 83:6-85:18). Until approximately October 30, 2017, the Class Members strictly clocked in and clocked out via Point of Sales registers in Defendant's retail locations. (Exhibits 5-10, Timekeeping Policies). Around October 30, 2017, Defendant's policy changed such that time stamps could be entered via both Point of Sales registers as well as mobile laptops located in Defendant's retail locations. (*Id.*).

### 2. Loss Prevention Inspections Were Performed Off the Clock

During the entire relevant time period, Defendant required all non-exempt employees in the retail stores to submit to Security Checks any time they left the store:

> Q. ...**[I]s it a requirement for the employees to submit to bag checks when they are leaving a store?**
> A. **Yes.**

(Exhibit 1, 30(b)(6) Depo., 122:24-123:22, 137:20-140:17; *see also* Exhibits 12-16, Security Check Policies)("**An employee's refusal to permit a search pursuant to this policy is grounds for disciplinary action, up to and including termination.**")

**It was not until September 24, 2018 that Defendant finally mandated that Security Checks must occur while employees are on the clock .** (Exhibit 15, Sept. 24, 2018 Security Check Policy, Carters/NC 000333 ("The task of completing a bag check is an on the clock task and therefore must be paid time.")). ***Prior* to September 24, 2018, Defendant's uniform policies failed to mandate that Security Checks were to be completed while on the clock** (*See* Exhibits 12-14, Security Check Policies).

At all times, Defendant's "Bag Checks and Personal Property" policies uniformly outlined the specific procedures for conducting Security Checks, including instruction regarding how to conduct coat checks, bag checks, and employee purchases, in detail. (*Id.*; Exhibit 1, 30(b)(6) Depo, 124:24-125:5). For coat checks, the policy required:

• Employees hold coat out in front of them by the neck.

- Manager pats down coat.
- Any items in the pockets should be removed by the employee.

(*See* Exhibit 13, Security Check Policy, Carters/NC 000432).

Defendant's "Bag Checks and Personal Property" policy also explained the precise, uniform  process for the completion of the Security Checks:

- Employees must open and present purses, backpacks and shopping bags so the manager can see the contents.
- Pockets, flaps and zippers should be moved to allow full visibility of contents.
- Managers may not put their hands inside bags or touch an employee's belongings.
- Employee must move or remove items if requested by the manager on duty.

(*Id.*)

Defendant's "Bag Checks and Personal Property" policy set forth additional requirements for submitting to and completing employee purchase inspections:

- Employee must open all shopping bags containing the employee's purchases to allow the manager on duty to audit the contents.
  - This includes purchases made at other merchants.
- Employees must present receipts for all purchases made at Carter's, Inc. ...

(*Id.*)

As a result, Defendant's required Security Checks that were extensive and time-consuming, as the Security Checks also included the common procedure where:

- Employees must enter and exit through the front doors at all times.
- The Company will provide lockers and lock [and] [l]ockers must be used to store personal belongings (purses, packages, backpacks, cellular phones, etc.) and are to be kept locked while on duty and unlocked while off duty.
- Employees who carry personal items such as purses, backpacks, coats, shopping bags, lunch coolers, etc., will be asked to open these items for examination by management **upon leaving the store for any reason (meal/rest period, end of shift, etc.)**. ...

(Exhibits 12-14, Security Check Policies).

Employees typically would wait approximately five (5) minutes on average for a Security Check to be completed.  (Exhibit 18, Arena Decl., ¶ 5 ("routinely had to wait **5-7 minutes"**); Exhibit 22, Kunst Decl., ¶ 6 ("routinely waited **3-7 minutes"**); Exhibit 21, Zoblisien Decl.,¶ 6 (waited "**5-6 minutes** for an employee to become available to perform their bag checks"); Exhibit 20, Pearson Decl., ¶ 6 ("waited **3-7 minutes"**).

Until September 24, 2018, in addition to failing to state that Security Checks must be on the clock, Defendant's policy required that all "[b]ag and coat checks must be conducted at the front door and while still inside of the store." (Exhibits 12-14, Security Check Policies). Further, if "a store ha[d] a CCTV system, the bag check must be conducted in view of the camera system" and *before* employees left the location (*Id.*).

Prior to September 24, 2018, Defendant's policy and practice was for Security Checks to be completed **after** employees clocked out. **Plaintiff testified the procedure was to: "clock out, grab your stuff, *then* they check your bag; you're more than welcome to leave."** Exhibit 11,  Christensen Depo., 156:6-23; *see also* (Exhibit 17, Christensen Decl., ¶¶ 5-6; Exhibit 18, Arena Decl., ¶¶ 5-6 (Before September 24, 2018, Defendant's policy required that mandatory checks be performed after employees clocked out); Exhibit 21, Zoblisien Decl., ¶¶ 5-6 (same); Exhibit 20, Pearson Decl., ¶¶ 5-6 (same); Exhibit 22, Kunst Decl., ¶¶ 4,6 (same).

Indeed, during the Security Check Class Period, Defendant actively trained the Store Managers to clock employees out before conducting inspections:

> **As I was trained during my store manager training... I was required to ensure that store employees were <u>clocked-out before presenting themselves for their mandatory bag checks.</u>**

(Exhibit 18, Arena Decl., ¶ 10).

Additionally, Defendant's uniform Security Check policy checked bags *and* clothing before allowing employees to leave Defendant's stores.

> **Prior to Defendant's change to a compliant policy in September of 2018, if an employee had no personal possessions, they were still required to clock-out and then present themselves** to the store manager or the employee tasked with performing bag checks to show that they had nothing to check, at which point they were then released from Defendant's control and could leave the premises.

(*Id.*)

Defendant, therefore, should have known that the checks would occur off the clock as shown by Defendant's policies during the Class Period, as well as those uniformly revised policy issued *after* the close of the Class Period :

---

- • Employees in California must have bag checks conducted **while clocked in for their shift**.
- • The task of completing a bag check is an **on the clock task** and therefore must be **paid time**....

(Exhibit 15, Sept. 24, 2018 Security Check Policy at Carters/NC000333).

**This on the clock policy should have been in place *during*, not after the Class Period. Former store manager Kristen Arena confirmed it was not.**

Approximately in September of 2018, I participated in a conference call led by Defendant's District Manager, Ms. Phala Sem, during which Ms. Sem advised me and other store managers of a policy change pertaining to the bag check procedure. ... **On the call, Ms. Phala told us that Defendant changed their policy and Defendant would *now* allow non-exempt employees to submit to our mandatory bag checks before clocking-out, while being compensated.**

(Exhibit 18, Arena Decl., ¶ 9).

### 3.   Security Checks Were Required Before Meal Periods

Class Members were not permitted to leave a retail location for a meal period before undergoing a Security Check.  (Exhibit 1, 30(b)(6) Depo., 127:10-16; *see also* Exhibit 14, April 2, 2018 Policy, Carters/NC 000330 ("Employees who carry personal items... will be asked to open these items for examination by management upon leaving the store for any reason (**meal**/rest period, end of shift, etc.)). As such, prior to September 24, 2018, when the Class Members left Defendant's retail locations for meal breaks, the Security Checks were conducted when the employees were clocked out from Defendant's timekeeping systems and still under Defendant's control during time which was designated for meal breaks.  (*See* Exhibit 17, Christensen Decl., at ¶ 6 ("prior to Defendant's policy change... non-exempt store employees were required to clock-out for our meal periods prior to presenting ourselves and submitting to the mandatory bag check..."); Exhibit 21, Zoblisien Decl., ¶ 8 ("**...the mandatory bag check routinely resulted in me receiving less than 30 minutes for my meal period**."); Exhibit 22, Kunst Decl., ¶ 6 (had to clock out then submit to a bag check); Exhibit 20, Pearson Decl., ¶ 8 ("**...mandatory bag checks routinely resulted in my receiving less than 30 minutes for my meal period.**")).

Unlike Defendant's rest period policies which essentially built in 5 minutes for Security Checks by providing employees with 15 minutes, Defendant's timekeeping policies with respect to meal periods have only provided 30 minute meal periods to the Class Members. (*See, e.g.*, <u>Exhibit 7</u>, Timekeeping-California Stores Only, Carters/NC 000467-468).  Therefore, prior to September 24, 2018 while Security Checks were off-the-clock, Class Members' 30 minute meal periods were unlawfully shorted.

### 4.    The Security Check Policies Were For Defendant's Benefit

There is no question that the Security Checks benefitted Defendant as Defendant's primary tool to reduce product theft:

> Q.    [W]hy does Carter's require that employees submit to bag checks?
> A.    So, um, from a standpoint of completing bag checks is more from a standpoint of our **shrink and safety and theft policies <u>to ensure that, um, product is not leaving the building</u>**.

(<u>Exhibit 1</u>, 30(b)(6) Depo., 125:6-11; *see also* <u>Exhibits 12-16</u>, Security Policies).

### 5.    Class Members Were Restricted to the Premises for Rest Periods

Defendant uniformly obligated every Class Member to be on-premises during rest periods, unless they received explicit permission from their manager to leave the store.

> **Employees should ask management for permission to leave the store during a rest period.**

(Timekeeping Policies, <u>Exhibit 5-10</u>).

This rest period policy was uniformly applicable to all Class Members during the relevant time period and Defendant's expectation was that the Class Members would fully comply with this requirement. (<u>Exhibit 1</u>, 30(b)(6) Depo., 67:16-68:2). Defendant's policy to not allow Class Members to leave the retail stores during rest breaks without authorization contrasts with Defendant's policy regarding meal periods which states:

> Employees are **free to leave the store** or use the designated area of the back room for meal periods.

(*Id*).

Defendant confirmed the difference was to exert extra control for rest breaks:

> Q.    [W]hy were the employees required to seek permission to leave during a **rest period** instead of just leaving independently if they wanted to?

A.      From a manager's standpoint **a rest period is still paid time**...

(Exhibit 1, 30(b)(6) Depo., 68:3-69:6.

> Employees are not free to leave the premises at will during rest breaks. **I was told by [the District Manager] Ms. Sem that because rest breaks are paid, employees are required to stay on the premises.**

(Exhibit 18, Arena Decl., ¶ 12).

Defendant's common rest period policy prohibiting non-exempt employees from leaving the premises during rest periods is confirmed by other Class Members, as well. (*See* Exhibit 22, Kunst Decl., ¶ 7 ("I was required by Defendant's policies and procedure to remain on the premises during my rest breaks."); Exhibit 21, Zoblisien Decl., ¶ 11). Plaintiff was also confined to the premises during rest periods:

> Q.      And no one ever ordered you to stay inside the store and work during a rest period, right? ...
>
> A.      **That's false.  They've had us stay on our rest periods to stay in the store for help.**

(Exhibit 11, Christensen Depo., 159:5-10).

Consistent with Defendant's policies regarding meal periods and rest periods, Mr. Christensen was permitted to leave the store during meal breaks but was restricted from leaving the store during rest breaks at all five (5) locations where he worked.  (Exhibit 11, Christensen Depo., at 156:10-157:14; Exhibit 17, Christensen Decl., at ¶ 4).

The Class Members' experiences, therefore, were consistent with Defendant's written and uniform policy which prevented the Class Members from leaving the premises during rest breaks without permission.

## III.    LEGAL STANDARD

### 1.    Substantive Law

#### A.    California Law Requires All Non-Exempt Employees Be Paid for All Hours Spent under the Control of the Employer

The IWC Wage Order at issue here requires employers to pay employees for all "hours worked." IWC Wage Order No. 7-2001. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the

time the employee is suffered or permitted to work, whether or not required to do so." *Id*. at § 2(G). Significantly, the Ninth Circuit in *Frlekin v. Apple Inc*., 979 F.3d 639 (9th Cir. 2020) determined that the time spent by employees waiting for and undergoing security checks is compensable time worked. *Id*. at 642. The Ninth Circuit decision followed the logic of the 2015 decision of the district court which certified the security check claims based on the uniform written policies of Apple finding that the question of whether employees must be paid for time undergoing security checks presented a common issue which "overarches the entire controversy." *Frlekin*, 309 F.R.D. at 524.

The fact that the security checks did not matter given the California Supreme Court's decision in *Troester v. Starbucks Corp.,* 5 Cal. 5th 829 (2018) that "[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." *Id.* at 847. Given that all Class Members were subjected to the same Security Check policy, whether these Security Checks should have been compensated is a predominant, common question.

## B.   California Law Requires All Non-Exempt Employees to Be Completely Relieved of Duties for Rest Periods

Plaintiff's theory of liability is premised on Defendant's uniform facially non-compliant rest period policy that fails to free the employees from the employer's control. Plaintiff's theory is also based on Defendant's universal policy and practice of prohibiting non-exempt employees from leaving the premises of Defendant's retail locations during a rest period without affirmatively asking for permission.

The ruling by the California Supreme Court in *Augustus* noted that the obligations of an employer to provide employees with relief for meal periods must be "harmonized" with what the employer must do for employees during rest periods.

> It would be difficult to cast aside section 226.7's parallel treatment of meal periods and rest periods and conclude that employers had completely distinct obligations when providing meal and rest periods.

*Augustus, 2* Cal. 5th 257 at 265 [internal quotes and citations omitted].

"What makes sense instead is to infer that employers' responsibilities are the same for meal and rest periods—an inference that also reflects the protective purpose of both." *Id.* As the California Supreme Court explained, "a rest period means an interval of time free from labor, work, **or *any other* employment-related duties**. And employees must not only be relieved of work duties, **but also be freed from employer control over *how they spend their time***." *Augustus,* 2 Cal. 5th at 270.

Additionally, the Division of Labor Standards Enforcement (DLSE) in November 2017 the DLSE posted the following:

> 5.   Q:   Can my employer require that I stay on the work premises during my rest period?
>
>       A:    No, your employer cannot impose any restraints not inherent in the rest period requirement itself. ...

https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm.

DLSE opinion letters offer valuable guidance for courts tasked with independent review of Labor Code provisions. *Brinker,* 53 Cal.4th at 1029, fn. 11. Under this law, the claim also raises predominantly common questions based on Defendant's disparate treatment employees on rest periods compared to meal periods.

## 2.    Class Certification Standard

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 131 S. Ct. at 2550. A party must demonstrate:

> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

1   "Second, the proposed class must satisfy at least one of the three requirements

2   listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Here,

3   Plaintiff seeks certification of the class under Rule 23(b)(3), which permits maintenance

4   of a class action if "the court finds that the questions of law or fact common to class

5   members predominate over any questions affecting only individual members," and that

6   "a class action is superior to other available methods for fairly and efficiently

7   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), the Court

8   may consider:

9   (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

10   (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

11   (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

12   (D)   the likely difficulties in managing a class action.

13   Fed. R. Civ. R. 23(b)(3).

14

15   **IV.   DISCUSSION**

16   Plaintiff respectfully submits that Plaintiff's evidence satisfies the requirements

17   of Rule 23(a) and Rule 23(b)(3) as to the claims underlying this proposed class.

18   **1.   <u>Numerosity and Ascertainability</u>**

19   Defendant stipulated to numerosity following the L.R. 7-3 conference. (Mukherjee

20   Decl., 2). Defendant employed approximately 7,967 non-exempt employees who worked

21   in California at Defendant's retail locations. (Def. Suppl. Response to Interrogatory No.

22   14, Set One, <u>Exhibit 3</u>).  The Security Check and Rest Period classes may be ascertained

23   through Defendant's time records based on the applicable dates of Defendant's

24   uniformly applied policies.  The Security Check class members are estimated to be

25   approximately 7,680 individuals who had at least one shift during the applicable time

26   period. (Gorlick Decl.  at ¶ 11).  The Security Check Class Members who received at

27   least one (1) meal period during the Security Check Class Period is estimated to be 6,770

28   employees, based on the sample. (*Id*. at ¶ 12).

1   The Rest Period Class is estimated to be a total of 7,830 employees. (*Id*. at ¶ 10).

2   Accordingly, numerosity is satisfied as has ascertainability. (*Id*. at ¶¶ 10-12).

### 2.   **Commonality**

4   Rule 23(a)(2) requires that "there are questions of law or fact common to the

5   class." Fed. R. Civ. P. 23(a)(2). "Commonality requires a plaintiff to demonstrate that

6   the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-350 (citation

7   omitted). The plaintiff must allege that the class injuries "depend upon a common

8   contention" that is "capable of classwide resolution." *Id*.

### A.   **The Security Check Class Raises Common Questions**

10   Here, common questions are clearly presented by the Security Check class.  The

11   district court in *Frlekin v. Apple* certified a class of all Apple California nonexempt

12   employees who were subject to the bag-search policy from July 25, 2009, to the present.

13   *Frlekin*, 8 Cal. 5th at 1045. The District Court ruled that time spent by class members

14   waiting for and undergoing exit searches is not compensable as "hours worked" under

15   California law.  *Id*. Upon review, the California Supreme Court reversed and held that

16   "plaintiffs' time spent on Apple's premises waiting for, and undergoing, mandatory exit

17   searches of bags, packages, or personal Apple technology devices, such as iPhones,

18   voluntarily  brought to work purely for personal convenience is compensable as 'hours

19   worked' within the meaning of Wage Order 7." *Id*. at 1058. Whether an employee spent

20   5 or 20 minutes in a Security Check line did not matter.  *Id*. at 1052-1053. **The uniform**

21   **fact that mattered to liability was that the Security Check was an "employer-**

22   **controlled activity [that] primarily serves the employer's interests."** *Id*.  Similar

23   common facts in this case require class certification under *Frlekin*.

24   Even before the analysis was simplified in *Frlekin*, courts routinely granted

25   certification of classes alleging off-the-clock work claims where those claims similarly

26   revolves around company-wide policies as described above.  In *Ser Lao v. H&M Hennes*

27   *& Mauritz, L.P.*, 2019 U.S. Dist. LEXIS 222542 (N.D. Cal. Dec. 30, 2019), the District

28   Court denied a motion to decertify a class of non-exempt employees where the plaintiff's

1    claims were predicated on security checks and associated wait time.  *Id.* at *1. The

2    employer in *Ser Lao* argued that the certified class lacked commonality on the basis that

3    deposition testimony demonstrated inconsistent application of the security check

4    policies. *Id.* at *9.  The court summarily dismissed the employer's argument and found

5    that the "purported inconsistencies **do not 'negate' Plaintiff's allegations** that, before

6    they are permitted to leave, all class members must [submit to security checks].... Nor

7    do the purported inconsistencies suggest that the visual inspections–whatever precise

8    form they take–are not mandatory.   Rather, **they are minor and do not defeat**

9    **commonality**." *Id.* at *14-*15 (citation omitted). Based on this reasoning, similar

10   arguments Defendant may raise here would not preclude a finding of commonality.

11        Another illustrative case is *Rodriguez v. Nike Retail Services*, 2016 U.S. Dist.

12   LEXIS 110961 (N.D. Cal. Aug. 19, 2016). There, 1) Nike maintained "a uniform policy

13   of requiring all employees to be inspected when they leave the store, even if this means

14   employees have to wait for a manager, supervisor, or security guard to become available

15   to do the inspection;" and 2) as here **Nike *lacked* a uniform policy "providing payment**

16   **for time spent for exit inspections."** *Id.* at *1. Nike argued that individualized issues

17   are necessary to determine liability because some employees "clock out of work and then

18   linger in the store for personal reasons." *Id.* at *20. According to Nike, these employees

19   were not subject to its control when they are going through or waiting for an exit

20   inspection. *Id.* These arguments were rejected:

21           The fact that some employees are engaging in personal activities, says
             Nike, means that whether employees are subject to the control of their
22           employer after clocking out is an individualized inquiry. But this is
             irrelevant: Rodriguez is not asking for compensation for all the time
23           between when an employee clocks out and when she walks out the front
             door. He is asking for compensation only for time spent waiting for an exit
24           inspection or being inspected. **All employees have to be visually**
             **inspected before they can leave the store, and so no individualized**
25           **inquiries are required**.

26   *Id.* at *20.

27        In a holding that was prescient of the ruling in *Frlekin*, the court noted that equally

28   unavailing was Nike's "irrelevant" argument that employees make a personal choice

whether to bring a bag to work and be subjected to a bag check:

> Since employees make a decision to bring a bag, says Nike, none of them are subject to their employer's control. This argument is true so far as it goes—but it does not go far. It is literally true that only employees who bring bags (or boxes or something similar) to work get their bags checked when they leave. But this characterization of Nike's employee exit procedures omits the fact that all employees must be visually inspected by a manager, supervisor, or contract security before they can leave the store, whether or not they have a bag.

*Id.* at *21. In other words, an employee subject to either type of inspection—a bag check or visual inspection—by the employer "may still be subject to the employer's control." *Id*. at *22. The same logic that was embraced in *Frlekin* and *Rodriguez* applies here. Defendant's employees cannot leave the premises without being inspected. During the Class Period, Defendant uniformly *lacked* a policy of paying employees for waiting time for Security Checks. The case is here is actually stronger given a uniform change in policy where Defendant reversed course and require Security Checks to be performed while on the clock.  Before the close of the Class Period, no such policy existed.

The court in *Chavez v. Converse, Inc.* also granted class certification of a nearly identical security check claim as the one alleged by Plaintiff. (*See* Notice of Lodgement, Exhibit B, Order Certifying Class, *Chavez v. Converse, Inc.*, 15-cv-03746 NC, [Doc. No. 89]). There, **class certification was granted because of an *absence* of "a policy explicitly requiring off-the-clock bag checks."** (*Id*. at 3:5-8). For the purpose of certification, it was sufficient for the plaintiff to demonstrate "that most, if not all, Converse stores are set up such that an employee would necessarily be off-the-clock when a bag check occurs." (*Id*. at 3:22-24). Plaintiff has provided similar evidence here.

There are also common questions regarding the Security Checks' impact in reducing the length of meal periods for employees. The common question is whether the time the employee spent in a Security Check during a meal period while clocked out of Defendant's timekeeping system triggered Defendant's obligation to pay an hour of premium pay. Pursuant to the California Supreme Court's decision in *Donohue v. AMN Services, LLC*, 2021 Cal. LEXIS 1294 ( Feb. 25, 2021), this common question may be

answered for all Security Check class members in one proceeding.  In *Donohue*, the California Supreme Court held that employers "cannot engage in the practice of rounding time punches – that is, adjusting the hours that an employee has actually worked to the nearest preset time increment – in the meal period context" reasoning that "meal period provisions are designed to prevent even minor infringements on meal period requirements, and rounding is in compatible with that objective. *Id*. at *2. The *Donohue* Court concludes that the reduction of a meal period by only a few minutes defies the California Wage Order's meal period provision. *Id* at *18-*21. The *Donohue* ruling concerning the impact of rounding policies on meal periods can be applied to the required submission to off-the-clock Security Checks as these Security Checks act to shorten or delay meal periods the same way rounding policies shorten or delay meal periods. As such, whether Security Checks trigger Defendant's obligation to pay premium pay for meal period violations is a common question which can be adjudicated for all Security Check class members here.

## B.    <u>The Rest Period Class Raises Common Questions</u>

Whether Defendant should have paid an extra hour of wages to non-exempt employees due to the absence of an off-duty rest period is a common question based on Defendant's requirement that employees may not leave the premises of the retail store unless permission is granted.

As the California Supreme Court explained, "a rest period means an interval of time free from labor, work, or any other employment-related duties. And employees must not only be relieved of work duties, but also be freed from employer control over how they spend their time." *Augustus,* 2 Cal. 5th at 270. Just as theCalifornia Supreme Court in *Augustus* handled the liability question there on a classwide basis, there is no doubt that Plaintiff's theory of liability based on Defendant's disparate treatment of meal and rest period rights should be answered for all Rest Period class members in one stroke.  For meal periods, Defendant allows Class Members to leave the premises without seeking permission.  For rest periods, however, Defendant does not make such

an allowance and, instead, admits to requiring the Rest Period class members to remain on premises unless explicitly provided permission to leave. The predominant common question is whether this policy was lawful.

Notably, the California Supreme Court in *Frlekin* referred to *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968 (1995) (*disapproved on other grounds in Tidewater Marine Western, Inc. v. Bradshaw,* 14 Cal.4th 557(1996)), as supporting the court's interpretation over the control clause. *Frlekin*, 8 Cal. 5th at 1047. The court noted that in *Bono*, workers who have not received security clearance were required to "remain on the plant premises during their 30-minute lunch period unless they ma[d]e prior arrangements to reenter the plant after leaving for lunch." *Id.* This is no different, under Plaintiff's theory, than the control exerted over rest periods here, requiring Defendant's employees to obtain permission before leaving the premises.  The *Frlekin* court noted that in *Bono* the dictionary definition of "control" lead to the holding there that the employees who were required to remain onsite during their lunch hour were entitled to compensation for that time. *Id.* at 1047 (*citing Bono,* 32 Cal.App.4th at 975).

Similarly here, the predominantly common question of liability is: Under the rule to harmonize meal period rights with rest period rights, did Defendant lawfully allow Class Members to leave the premises without permission for meal periods, but unlawfully restrict them to the premises for rest periods?

### 3.   **Typicality**

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (*quoting Hanlon v. Chrystler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)). As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id*. The commonality, typicality, adequacy-of-representation

1   requirements "tend to merge" with each other. *Dukes*, 564 U.S. at 349 n.5.

2       Plaintiff Christensen satisfies the typicality requirement. Plaintiff has established

3   he is a member of the Security Check and Rest Period Classes he seeks to represent.

4   (Exhibit 17, Christensen Decl. ¶¶ 2-12). Moreover, his claims and those of the putative

5   class rely on the same course of conduct, namely the policy of requiring Security Checks

6   without compensation and restricting employees to the premises during rest periods

7   unless permission is granted to leave the premises. Accordingly, typicality is satisfied.

8   *See Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, (C.D. Cal. 2009).

9       **4.   Adequacy**

10      Rule 23(a)(4) permits certification of a class action only if "the representative

11  parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

12  23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have

13  conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by

14  qualified and competent counsel." *Dukes*, 603 F.3d at 614 rev'd on other grounds, 564

15  U.S. 338. **Defendant has stipulated to the adequacy of Plaintiff and Plaintiff's**

16  **counsel.** (Mukherjee Decl., ¶ 2). Indeed, Plaintiff does not have any conflicts with the

17  proposed class. He seeks the same legal remedies as the putative class arising from a

18  similar course of conduct. (Christensen Decl., ¶¶ 16-20).

19      Second, as to adequacy of counsel, the Court must consider "(i) the work counsel

20  has done in identifying or investigating potential claims in the action; (ii) counsel's

21  experience in handling class actions, other complex litigation, and the types of claims

22  asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

23  resources that counsel will commit to representing the class." Fed. R. Civ. P.

24  23(g)(1)(A). Here, Blumenthal Nordrehaug Bhowmik De Blouw LLP has set forth, by

25  declaration, the experience they have in litigating wage and hour class action lawsuits

26  in state and federal courts. (Bhowmik Decl., ¶¶ 3-6). In light of the information provided

27  in the declaration of Plaintiff's Counsel and Defendant's stipulation, Plaintiff respectfully

28  submits that Plaintiff's Counsel satisfy Rule 23's adequacy requirement.

### 5.   Common Issues of Fact and Law Predominance

#### A.   Security Check Class

The California Supreme Court has set forth in *Frlekin* that Security Checks exert sufficient control for the benefit of the employer that such time is compensable. *Frlekin*, 8 Cal. 5th at *1042. The first predominant common question is whether the Security Checks are similarly compensable time.  Based on the uniform policies under which these checks took place, common questions of law and fact clearly predominate over individualized ones.

Another predominant common question is whether Defendant had knowledge or reason to believe that employees should have been compensated for time spent submitting to Security Checks.  Defendant's subsequently enacted policy indicates that Defendant should have know employees should have been compensated for Security Checks. As held by one of the several courts that have granted class certification for this claim, where as here the relevant Security Check policies are uniform, "the variation in employee choices that defendant points to is irrelevant to the question of whether the time spent in exit inspections is 'hours worked.'" *Moore*, 311 F.R.D. at 613-16.

**Defendant's omission failing to state that Security Checks are compensable is a significant factor in favor of class certification**. Notably, **the court in *Moore* held that "if the employees knew that they would be paid for that time, they may well have made different choices."**  *Id*.  **This observation on which the court concluded common issues predominate is relevant here given that Defendant similarly failed to put employees on notice that time spent submitting to Security Checks was compensable until September 24, 2018**.  Accordingly, whether or not the Security Check class is entitled to relief for unpaid wages and shorted meal periods  rises and falls based on similarly predominant questions of law and fact. *Moore*, 311 F.R.D. at 620-21 ("While the questions related to length of employee lunch breaks may not apply to the class as a whole, they are common to the lunch break subclass and they predominate.")

The trial of damages for unpaid time or meal period violations also will not cause individualized issues to predominate over common ones. *Frlekin*, 309 F.R.D. at *526 (damages calculations "could turn out to consume considerable time, but *Leyva* holds we may, if not must, do so for damages issues"). Here, if the class prevails on its liability claims, only then will the court determine how many hours of pay each class member is entitled to, how many meal breaks each class member was denied, and the resulting penalties that defendant must pay. The law is clear that the fact that damages calculations may be more difficult because there are no records of time spent waiting for a Security Check is of little consequence. Where an employer has failed to keep records, "the consequences for such failure should fall on the employer, not the employee." *Taylor v. FedEx Freight, Inc.*, 2015 U.S. Dist. LEXIS 64177, *44 (E.D. Cal. May 15, 2015) (internal quotation marks omitted). A defendant's "failure in record management, if any, or the difficulty in compiling precise records does not defeat class certification." *Id.* at *44-*45; *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 545 (E.D. Cal. 2014) ("Class action litigation grows out of systemic failures of administration, policy application, or records management . . . to allow the same systemic failure to defeat class certification would undermine the very purpose of class action remedies.").

Finally, *Frlekin* provides a perfect example of how the damages issue should be handled, where certification was warranted because calculation of individualized damages would be facilitated through efficient means, including claim forms, questionnaires, surveys, representative testimony, and the use of a special master.

> In the event that Apple loses on the merits, it will be necessary, as Apple points out, to litigate the issue of who actually stood in line and for how long. This would be pursuant to a claims process, after yet another class notice, wherein class members would certify under oath the extent to which, if at all, they stood in line beyond any de minimis threshold. Claimants would, of course, be subject to cross-examination and counter-proof offered by Apple.

*Frlekin v. Apple Inc.*, 309 F.R.D. 518, 526 (N.D. Cal. 2015)

Here, Plaintiff's Trial Plan sets forth two methods by which class-wide damages may be assessed manageably using projected class-wide damages based on surveys and

1   inferential statistical analysis and/or using a claims process authorized by the District

2   Court in *Frlekin*.  (*See* Trial Plan at section III, filed and served herewith). Accordingly,

3   Plaintiff respectfully submits that Plaintiff has satisfied the predominance requirement

4   of Rule 23(b)(3) as to the Security Check claim for unpaid minimum and overtime wages

5   and meal premiums owed as a result of off the clock inspections.

6                               **B.   Rest Period Class**

7          The common, predominant merits question is whether Defendant's across the

8   board requirement for the Rest Period Class Members, to not leave Defendant's retail

9   stores unless permission is granted, violates California law. In *Augustus*, the California

10  Supreme Court affirmed the trial court's granting of summary judgment in favor of the

11  plaintiffs on this issue based on the defendant's policy requiring employees to remain on

12  call to respond to emergencies.  *Id*. at 270.  Here, the predominant common question can

13  similarly be answered once and for all times for the members of the Class.

14         At bottom, the predominant common question is just as capable of classwide

15  resolution as the one in *Augustus*, which is whether the employer imposed "obligations

16  are irreconcilable with employees' retention of freedom to use rest periods for their own

17  purposes."  *Id*. at 270; *see also* Exhibit C, Notice of Lodging, July 30, 2018 Minute

18  Order Granting Class Certification, El Pollo Loco Wage and Hour Cases, JCCP 4957 at

19  pg. 3 (In granting class certification of a rest period class and finding "[w]hether or not

20  the holding in *Augustus* applies to the facts of this case is an open question.  However,

21  what is not in question is the fact that Defendant's policy applies to all of its employees.

22  Put another way, whether Defendant's policy is lawful is a merits question and thus

23  inappropriate to evaluate at the certification stage.").  As such, the uniform on premises

24  obligation violates the employee's right to freedom during rest periods. *Id*.

25         Finally, the damages issue may also be dealt with manageably at trial, as outlined

26  in Plaintiff's Trial Plan.  Depending on the ruling on the merits, damages can be

27  determined as easily as an analysis of Defendant's time records to demonstrate which

28  employees were eligible for rest periods and how many rest periods the employees were

1   eligible to receive.  (Trial Plan at V(B)).  To the extent the merits determination requires
2   a more complex damages determination, the same procedure outlined regarding the
3   Security Check class may be applied with respect to the Rest Break class in the form of
4   an analysis of claim forms and/or surveys. (*Id*.).

5   **6.      A Class Action Is the Superior Means of Achieving Justice**

6   The superiority requirement of Rule 23(b)(3) requires the Court to find "that a
7   class action is superior to other available methods for fairly and efficiently adjudicating
8   the controversy." Fed. R. Civ. Proc. 23(b)(3). Factors which guide the Court's inquiry
9   include: (1) the interest of members of the class in individually controlling the
10   prosecution or defense of a separate action; (2) the extent and nature of any litigation
11   concerning the controversy that has already commenced; (3) the desirability of
12   concentrating the litigation in a certain forum; and (4) the difficulties likely to be
13   encountered in the management of the class. *Id*. District courts are afforded wide
14   discretion to determine whether a class action is the superior method in a given action.
15   *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

16   As to the first and second factors, there is no record of evidence establishing that
17   individual proposed class members have an interest in prosecuting their cases
18   individually or that there is any similar pre-existing litigation by proposed Class
19   members. (Mukherjee Decl., ¶¶ 2-3). These factors therefore support certification.

20   As to the third factor, concentrating litigation in the Central District of California
21   is desirable here because the proposed classes consists only of California employees
22   alleging California state law claims in connection with conduct that occurred in
23   California. *McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011). This
24   factor, therefore, supports certification.

25   As to the fourth factor, courts must consider whether "the complexities of class
26   action treatment outweigh the benefits of considering common issues in one trial." *Zinser*
27   *v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001)(citation omitted). In
28   *Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013), the Ninth Circuit

explained that "if putative class members prove [defendant's] liability, damages will be calculated based on the wages each employee lost due to [defendant's] unlawful practices." *Id*. Here, if the classes prevail on the respective liability claims, then the Court can determine damages manageably employing projected class-wide damages based on surveys and inferential statistical analysis and/or using a claims process authorized by the District Court in *Frlekin*. (*See generally* Trial Plan). The damages suffered by each Class Member are not large, "class members may fear reprisal in pursuing individual claims against their employer," and "individual litigation against a well-funded defendant would be cost prohibitive." *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008), *adhered to*, 287 F.R.D. 615 (E.D. Cal. 2012); *see also Kurihara*, 2007 WL 2501698, at *11 (superiority was found "given the alleged existence  of a company-wide policy, the size of the class, and the relatively small amount of each individual claim"). As such, the fourth factor is met.  Thus, the Security Check and Rest Period Classes may be certified under Rules 23(a) and 23(b)(3).

## IV.   CONCLUSION

In conclusion, Plaintiff respectfully requests the Court GRANT Plaintiff's Motion for Class Certification, appoint Plaintiff Christensen as the class representative, appoint Blumenthal Nordrehaug Bhowmik De Blouw LLP as class counsel, and direct the parties to meet and confer and to submit an agreed-upon form of class notice and jointly submit a plan for the dissemination of the proposed notice.

Respectfully submitted,

Dated: March 16, 2021          BLUMENTHAL NORDREHAUG
                               BHOWMIK DE BLOUW LLP

                               By    /s/ Aparajit Bhomik          .
                                  Aparajit Bhowmik
                                  AJ@bamlawca.com
                                  Piya Muherjee
                                  Attorneys for Plaintiff