Seyfarth Shaw LLP
Jon D. Meer (SBN 144389)
E-mail: jmeer@seyfarth.com
Leo Q. Li (SBN 293539)
E-mail: lli@seyfarth.com
Romtin Parvaresh (SBN 301554)
E-mail: rparvaresh@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant
CARTER'S RETAIL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN CHRISTENSEN, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CARTER'S RETAIL, INC., a Corporation; and Does 1 through 50, Inclusive,<br><br>        Defendants. | Case No. 8:20-cv-00776 JLS (KESx)<br><br>Hon. Josephine L. Staton<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>[Orange County Superior Court Case No. 30-2020-01138792-CU-OE-CXC]<br><br>Date:     August 20, 2021<br>Time:    10:30 a.m.<br>Ctrm.:   10A<br><br>Complaint Filed: March 16, 2020<br>Trial Date:    None Set |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................... 1

II.   INDIVIDUALIZED ISSUES PREDOMINATE AND PRECLUDE CLASS CERTIFICATION ON THE OFF-THE-CLOCK BAG CHECK CLAIMS........... 1

    A.    Prior To September 2018, Defendant's Written Timekeeping Policy Required All Working Time To Be On The Clock And Bag Checks Were Considered Working Time ................................................... 1

    B.    Prior To September 2018, Defendant's Actual Practice Was To Conduct Bag Checks On The Clock, In Compliance With Defendant's Written Timekeeping Policy ................................................... 3

    C.    Even If Defendant's Written Bag Check Policy Prior To September 2018 Was Ambiguous, This Is Not Enough To Support Class Certification ................................................................... 4

        1.    If A Policy Is Silent Or Ambiguous, The Interpretation And Application Of The Policy Requires Individualized Inquiries ........... 5

        2.    The Evidentiary Record Shows There Were Different Interpretations Of Defendant's Bag Check Policy, Requiring Individualized Inquiries ................................................... 6

        3.    Conflicting Testimony Requires Denial Of Class Certification........ 8

        4.    Plaintiff's Failure To Show Classwide Harm Requires Denial Of Class Certification ................................................... 9

        5.    Defendant's Subsequent Clarification Of Its Bag Check Policy Cannot Show Classwide Harm ................................................... 10

    D.    Individualized Inquiries Preclude Class Certification Because Different Stores Had Different Procedures For Conducting Bag Checks ................................................................... 11

    E.    Individualized Inquiries Preclude Class Certification Because There Was No Policy Or Practice Requiring Employees To Wait For A Manager Off The Clock Before Going Through A Bag Check................. 12

    F.    Plaintiff's Case Authorities Are Distinguishable Because Defendant's Written Policy Does Not Mandate Off-The-Clock Security Checks.......... 13

III.  INDIVIDUALIZED ISSUES PREDOMINATE AND PRECLUDE CLASS CERTIFICATION ON THE MEAL PERIOD CLAIMS ................................. 15

    A.    Defendant Always Provided A Duty-Free Meal Period And All Security Checks Were Expected To Be Conducted Before The Meal Period................................................................... 15

    B.    Individualized Inquiries Predominate Because Most Employees Took Meal Periods Longer Than 35 Minutes And There Is No Record Showing Anyone Had A Meal Period Of Less Than 30 Minutes.............. 16

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.  INDIVIDUALIZED ISSUES PREDOMINATE AND PRECLUDE CLASS
     CERTIFICATION ON THE REST PERIOD CLAIM ........................................ 19

     A.  Defendant's Policy Permits Employees To Take Offsite Rest Periods ...... 19

     B.  Individualized Inquiries Preclude Class Certification Because
         Managerial Discretion Necessarily Means Some Employees Were
         Permitted To Leave, While Others Were Not Permitted To Leave ........... 20

     C.  Individualized Inquiries Predominate Because Virtually All
         Employees Were Granted Permission To Leave, And Many
         Employees Did Not Need To Seek Permission To Leave ........................ 21

         1.  There Is No Classwide Evidence That Employees Were Denied
             Permission To Leave The Store During Rest Periods ..................... 21

         2.  Most Employees Did Not Need To Seek Permission Before
             Leaving The Store For Their Rest Periods ................................ 22

     D.  Individualized Issues Predominate As To Whether Employees Ever
         Sought To Leave The Premises For A Rest Period ................................ 24

V.   CONCLUSION................................................................................ 25

68847327v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) ...............................................................1

*Arredondo v. Delano Farms Co.*,
  301 F.R.D. 493 (E.D. Cal. 2014) ...........................................................9

*In re AutoZone, Inc.*,
  289 F.R.D. 526 (N.D. Cal. 2012)............................................................6

*Bell v. Home Depot U.S.A., Inc.*,
  2017 WL 1353779 (E.D. Cal. Apr. 11, 2017) .....................................25

*Bibo v. Fed. Express, Inc.*,
  2009 WL 1068880 (N.D. Cal. Apr. 21, 2009).....................................14

*Bowen v. Target Corp.*,
  2020 WL 1931278 (C.D. Cal. Jan. 24, 2020).....................................25

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018) ...............................................................1

*Chavez v. AmeriGas Propane, Inc.*,
  2015 WL 12859721 (C.D. Cal. Feb. 11, 2015) .....................................8

*Figueroa v. Delta Galil USA, Inc.*,
  2021 WL 1232695 (N.D. Cal. Mar. 30, 2021) ......................................8

*Flores v. Supervalu, Inc.*,
  509 F. App'x 593 (9th Cir. 2013) ........................................................21

*Frlekin v. Apple Inc.*,
  309 F.R.D. 518 (N.D. Cal. 2015)..........................................................14

*Garcia v. Sun Pac. Farming Co-op, Inc.*,
  359 F. App'x 724 (9th Cir. 2009) ..........................................................8

*Gonzalez v. Mall*,
  281 F.R.D. 455 (S.D. Cal. 2012) .........................................................21

iv

*Heredia v. Eddie Bauer LLC*,
    2020 WL 127489 (N.D. Cal. Jan. 10, 2020)................................................6, 7, 10

*Hovsepian v. Apple, Inc.*,
    2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)......................................................6

*Howard v. CVS Caremark Corp.*,
    2014 WL 7877404 (C.D. Cal. Dec. 9, 2014) .......................................................7

*Hubbs v. Big Lots Stores, Inc.*,
    2017 WL 2304754 (C.D. Cal. May 23, 2017) ..................................................5, 8

*Hubbs v. Big Lots Stores, Inc.*,
    2018 WL 5264141 (C.D. Cal. Mar. 16, 2018)....................................................25

*Hughes v. WinCo Foods*,
    2012 WL 34483 (C.D. Cal. Jan. 4, 2012) ..........................................................21

*Kilbourne v. Coca-Cola Co.*,
    2015 WL 5117080 (S.D. Cal. July 29, 2015) .......................................................7

*Koike v. Starbucks Corp.*,
    378 Fed. App'x 659 (9th Cir. 2010) ....................................................................7

*Kurihara v. Best Buy Co.*,
    2007 WL 2501698 (N.D. Cal. Aug. 30, 2007) ..................................................14

*Lao v. H&M Hennes & Mauritz, L.P.*,
    2018 WL 3753708 (N.D. Cal. Aug. 8, 2018) ...............................................14, 18

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    311 F.R.D. 590 (C.D. Cal. 2015).......................................................................13

*Ogiamien v. Nordstrom, Inc.*,
    2015 WL 773939 (C.D. Cal. Feb. 24, 2015) .................................................5, 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    993 F.3d 774 (9th Cir. 2021) ...............................................................................9

*Ortiz v. CVS Caremark Corp.*,
    2013 WL 6236743 (N.D. Cal. Dec. 2, 2013)......................................................8

*Otsuka v. Polo Ralph Lauren Corp.*,
    2010 WL 366653 (N.D. Cal. Jan. 25, 2010).....................................................14

v

*Ritenour v. Carrington Mortg. Servs., LLC*,
  2018 WL 5858658 (C.D. Cal. Sept. 12, 2018) .....................................................25

*Rodriguez v. Nike Retail Servs.*,
  2016 WL 8729923 (N.D. Cal. Aug. 19, 2016) ...................................................14

*Santos v. TWC Admin. LLC*,
  2014 WL 12558009 (C.D. Cal. Aug. 4, 2014) ...................................................10

*Scott-George v. PVH Corp.*,
  2015 WL 7353928 (E.D. Cal. Nov. 20, 2015)....................................................14

*Senne v. Kansas City Royals Baseball Corp.*,
  315 F.R.D. 523 (N.D. Cal. 2016).......................................................................10

*Soto v. Castlerock Farming & Transport, Inc.*,
  2013 WL 6844377 (E.D. Cal. Dec. 23, 2013) ...................................................6, 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................................1, 10

**State Cases**

*Augustus v. ABM Sec. Servs., Inc.*,
  2 Cal. 5th 257 (2016) ...................................................................................24, 25

*Bono Enterprises, Inc. v. Bradshaw*,
  32 Cal. App. 4th 968 (1995) .......................................................................19, 20

*Brinker Rest. Corp. v. Superior Court*,
  53 Cal. 4th 1004 (2012) ....................................................................................8

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................6

68847327v.3

# I.   INTRODUCTION

As the Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), "what matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common **answers** apt to drive the resolution of the litigation." (emphasis in original).[1]

Plaintiff contends that there are "common questions" as to whether employees were required to participate in "bag checks" while off the clock.  But there are no common answers, because numerous witnesses—including Plaintiff himself—testified that bag checks were always on the clock and constituted paid time worked.

Plaintiff also contends that there are "common questions" as to whether employees were required to remain onsite during their paid rest periods.  But there are no common answers, because numerous witnesses—including Plaintiff himself—testified that employees regularly left their stores for rest periods, and if they were required to ask for permission to leave, it was always granted.

Based on this conflicting evidence, this case will require over 8,000 mini trials in order to establish liability.  Thus, class certification should be denied.

# II.   INDIVIDUALIZED ISSUES PREDOMINATE AND PRECLUDE CLASS CERTIFICATION ON THE OFF-THE-CLOCK BAG CHECK CLAIMS

## A.   Prior To September 2018, Defendant's Written Timekeeping Policy Required All Working Time To Be On The Clock And Bag Checks Were Considered Working Time

Plaintiff alleges that prior to September 24, 2018, Defendant required its employees to undergo bag checks "off the clock," because "there was no policy stating that Security Checks were considered by the employer to be on the clock time or practice to pay for Security Check time."  (Mot. 1:16-18.)  This is simply a misstatement of Defendant's policies.

Prior to September 24, 2018, Defendant had a written bag check policy stating that

---

[1] *Accord Campbell v. City of Los Angeles*, 903 F.3d 1090, 1115 (9th Cir. 2018) (same); *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (same).

"[e]mployees must present all bags, coats, personal property and packages to be checked by the Manager on Duty (MOD) whenever exiting the store for any reason (meal/rest period, end of shift, etc.)." (Mimnaugh Dep. Ex. 22.) In conjunction with Defendant's bag check policy, the written timekeeping policy explicitly provided "for paying employees for all hours worked." (Pl. Dep. Ex. 13, p. 1.) Defendant's written timekeeping policy defined "work time" as "time that an employee works at a store or otherwise spends performing duties." (*Id.*) Thus, if bag checks are "required," then participating in bag checks are among the "duties" that constitute "time worked."

When an employee is engaged in any required job duties, Defendant's written policy strictly prohibits working off the clock:

> Working "off the clock" means that work is performed by an employee but not recorded as work time, and therefore not paid; this is strictly prohibited and is grounds for disciplinary action up to and including termination. Examples include: Starting work before clocking in, **working after clocking out**, and taking work home to do without reporting time.

(*Id.*) (emphasis added). As Defendant's Rule 30(b)(6) corporate witness corroborated, security checks are considered work and must be paid under the timekeeping policy:

> Q.    [P]rior to September 24th, 2018, was there any -- any written document that specified that your bag checks are work -- are considered work?
>
> A.    It's a yes. The timekeeping policy.
>
> Q.    Okay. The timekeeping policy. But the timekeeping policy does it specifically call it a bag check?
>
> A.    It specifically calls out any work or tasks done while working for Carter's in our store.

(Mimnaugh Dep. 143:24-144:9.) As Defendant's corporate witness stressed, "bag checks [were] done on the clock" because "our written timekeeping policy [] says all jobs, all duties, all time worked must be recorded and paid." (Mimnaugh Dep. 154:2-8.)

Several store managers also testified that bag checks are considered job tasks and job duties, which are compensable under Defendant's written timekeeping policy. Crystal Zoblisien, a store manager at two Pismo Beach stores, admitted in deposition that

2

"whether you're conducting [a security inspection] or submitting yourself to a security inspection, that's considered work." (Zoblisien Dep. 37:3-6.)  And "under Carter's timekeeping written policy, the employees were paid for all hours worked."  (Zoblisien Dep. 38:5-7, 10.)  Kristen Arena, a store manager at the Orange store, also testified that "it was a required duty to participate in one of these bag checks or exit inspections," and "it was a work duty of the employee." (Arena Dep. 57:10-16.)  Whitney Pearson, an assistant manager at the Carlsbad store, similarly testified "going through a bag check … would also be considered work tasks or job duties as required by Carter's."  (Pearson Dep. 41:19-23, 42:2.)  "And the timekeeping policy stated that all time worked must be on the clock."  (Pearson Dep. 45:12-14.)  Maria Kunst, a sales associate at the Carlsbad store, also testified that "both undergoing and performing the bag checks were job duties."  (Kunst Dep. 87:20-23.)  And "it was company policy that there should be no off-the-clock work."  (Kunst Dep. 92:15-18.)

**B.** **Prior To September 2018, Defendant's Actual Practice Was To Conduct Bag Checks On The Clock, In Compliance With Defendant's Written Timekeeping Policy**

Plaintiff's own testimony confirms that bag checks were considered working time that must be on the clock.  As Plaintiff testified, employees **always** went through the bag checks on the clock:

Q.    So while you were a manager, the way you operated was you would **always** do the bag checks on the clock, right?

A.    Yes.

(Pl. Dep. 190:2-4, 7.)  Plaintiff's testimony that bag checks were conducted on the clock was consistent with the testimony of other employees.  When Plaintiff's declarants were subsequently cross examined during their depositions, they testified that managers conducted bag checks and then the employees clocked out **after** the managers completed the bag check.  Crystal Zoblisien, a manager at two Pismo Beach stores, explained, "after you finished waiting for the manager, … the manager will conduct the bag check … then you would clock out."  (Zoblisien Dep. 53:24-54:3, 6.)  Thus, "clocking out would [be]

3

68847327v.3

1    the last thing … you did before leaving the store." (Zoblisien Dep. 54:8-10, 13.)

2          Another Plaintiff's declarant, Sabrina Damian, an associate and a manager at the

3    Riverside Plaza and Canyon Springs stores, also testified at her deposition that whenever

4    she was conducting the security checks, she always made sure her employees were on the

5    clock—"[I] always made sure that the employees were on the clock when they were

6    going through the bag check."  (Damian Dep. 109:22-110:2.)

7          Other potential class members similarly testified that bag checks were conducted

8    on the clock.  *See, e.g.*, Evans Decl. ¶ 10 ("Whenever I have been involved in a bag check

9    either as the inspecting or exiting employee, the entire process has always taken place

10   when the other employee and I are on the clock."); Salas Decl. ¶ 13 ("Bag checks have

11   been conducted on the clock at all times during my employment."); Valdez Decl. ¶ 8

12   ("To comply with Carter's timekeeping policy, bag checks are always conducted while

13   the employee is on the clock. No one has ever told me to clock out before going through

14   a bag check."); Atchley Decl. ¶ 7 ("At all times, bag checks are conducted while the

15   employee is on the clock."); Martinez Decl. ¶ 7 ("In all of my job positions at both the

16   San Jose and Santa Clara locations, bag checks have always been conducted while the

17   employees involved are on the clock."); Pacheco Decl. ¶ 12 ("The bag check process is

18   always done on the clock."); Gaze Decl. ¶ 7 ("Because bag checks are job tasks, I know

19   the time spent conducting the bag check and submitting to the bag check is considered

20   time worked and should be captured on Carter's timekeeping system."); Wagner Decl.

21   ¶ 10 ("At all times during my employment, bag checks have been conducted while the

22   employee who is leaving the store and the employee who is conducting the bag check are

23   on the clock.").

24        **C.    Even If Defendant's Written Bag Check Policy Prior To September**
           **2018 Was Ambiguous, This Is Not Enough To Support Class**
25         **Certification**

26        At best, Plaintiff argues that Defendant's bag check policy prior to September 2018

27   was ambiguous.  Although Plaintiff argues that the written bag check policy did not

28   mention exit inspections should be on the clock or off the clock, he does not dispute that

                                              4

the written timekeeping policy required all time worked to be on the clock, and bag checks constitute time worked. Even if Plaintiff contends that these policies were ambiguous, this cannot support class certification, as individualized inquiries are necessary to determine how each manager and employee interpreted the policy.

### 1. If A Policy Is Silent Or Ambiguous, The Interpretation And Application Of The Policy Requires Individualized Inquiries

The decision in *Hubbs v. Big Lots Stores, Inc.*, 2017 WL 2304754, at *9 (C.D. Cal. May 23, 2017), is directly on point. In *Hubbs*, the defendant's written bag check policy required that "[e]ach time an associate exits the store with a bag, briefcase and/or box, a bag check must be completed." *Id.* at *8. Although the defendant's written security policy did not state that bag checks should be performed on-the-clock, the company's corporate witness "testified that a check of an employee's bag(s) was to be performed **before** the employee clocked out." *Id.* (emphasis added).

In denying class certification, the *Hubbs* court held that the plaintiffs "have not presented sufficient evidence to show that there was a common and consistent policy among Defendants to subject all employees at all of their stores to off-the-clock bag checks." *Id.* at *9. As the court explained, the commonality requirement was not satisfied, due to the lack of a common policy requiring all exit inspections to be off-the-clock. *Id.* at *9-10. Based on the lack of commonality, the court found the class was not ascertainable:

> Plaintiffs have not shown that the members of this putative class can be reliably identified, that there are a sufficient number of them to satisfy the numerosity requirement, that the alleged failure to provide compensation was the result of a common policy or that there was a common policy that bag checks be performed after employees had clocked out.

*Id.* at *10.[2]

---

[2] *Accord Ogiamien v. Nordstrom, Inc.*, 2015 WL 773939, at *1, 4, 6 (C.D. Cal. Feb. 24, 2015) (the employer's policy stated that any "handbag, briefcase or other bags … need to be checked," but the policy did not state whether these bag checks were to be done on the clock or off-the-clock, so the court concluded "it is not readily apparent that [the employer] has a facially invalid uniform policy consistently applied to a group of

5

1
2

## 2.   The Evidentiary Record Shows There Were Different Interpretations Of Defendant's Bag Check Policy, Requiring Individualized Inquiries

3

In our case, Plaintiff admitted that he always conducted bag checks on the clock.

4

(Pl. Dep. 190:2-4, 7.)  Thus, if the other managers might have conducted bag checks off

5

the clock, Plaintiff is not a "typical" class representative under Rule 23(a)(3).

6

But even if other managers had different policy interpretations or practices than

7

Plaintiff, individualized inquiries would preclude class certification.  As Plaintiff

8

conceded, each individual manager may have selected to do bag checks on the clock or

9

off the clock—"in order to find out which managers did bag checks on the clock and

10

which managers did bag checks off the clock, we'd have to ask every single manager."

11

(Pl. Dep. 190:19-22, 25.)

12

Plaintiff's expert also conceded that time and payroll records are not helpful,

13

because he "cannot determine who went through the bag check off the clock and who

14

went through the bag check on the clock."  (Gorlick Dep. 38:20-25.)  Where it is

15

impossible to determine which employees are subject to liability for bag checks off the

16

clock, class certification is in appropriate.

17

The recent decision in *Heredia v. Eddie Bauer LLC*, 2020 WL 127489, (N.D. Cal.

18

Jan. 10, 2020) is also instructive.  There, the employer's written policy stated "[a]ll

19

associates must have their handbags, packages, briefcases, backpacks and other parcels,

20

21

employees," and "at best, the language in the policy is ambiguous"; "class certification

22

would require a significant amount of work just to determine individual liability"); *Soto*

*v. Castlerock Farming & Transport, Inc.*, 2013 WL 6844377 at *15 (E.D. Cal. Dec. 23,

23

2013) (class certification denied for off-the-clock claims for failure to show an "unlawful

24

uniform policy" requiring off-the-clock work and employer has a policy of paying for all

25

time worked; "plaintiff bears the burden of proving that defendant had a uniform practice

or policy; if defendant did not … the commonality requirement is not satisfied"); *In re*

26

*AutoZone, Inc.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012) (denying class certification

27

because the class definition included employees who were not injured and had "no

standing to sue," which made the class not ascertainable); *Hovsepian v. Apple, Inc.*, 2009

28

WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (finding a class not ascertainable because it

included members who had "no injury and no standing to sue").

6

68847327v.3

1 | inspected by a member of store management whenever they leave the store." *Id.* at *1.

2 | The district court found that the "written security inspection policy … is silent on

3 | whether the exit inspections should be performed on the clock or off the clock." *Id.* at *4.

4 | After initially granting class certification, the court then decertified the class,

5 | finding that the employer's ambiguous policy was subject to different interpretation by

6 | different employees, resulting in predominance of individualized issues:

7 | > even though all employees are subject to the same written policy, it is clear
8 | > that, in practice, they undergo exit inspections differently – most on the
clock and some off the clock. Thus, it is impossible to know, without
9 | > individualized inquiries, which employees have undergone exit inspections
off the clock and were subjected to uncompensated time.
10 |

11 | *Id.* at *5.  The court then concluded that a class action trial would be unmanageable,

12 | based on the need for each employee to testify whether they experienced bag checks on

13 | the clock or off the clock:

14 | > Based on the current record, at trial, the jury would necessarily have to
15 | > decide whether each employee experienced uncompensated exit inspections.
Class actions are not appropriate where the resolution of the case would
16 | > require numerous mini trials.

17 | *Id.* at *6.  Courts have routinely held that claims for unpaid time off the clock are not

18 | amenable to class certification, because individualized inquiries are required to determine

19 | which employees were not compensated, if any.  *See, e.g.*, *Koike v. Starbucks Corp.*, 378

20 | Fed. App'x 659, 661 (9th Cir. 2010) (affirming denial of class certification because

21 | "individualized factual determinations were required to determine whether class members

22 | did in fact engage in [off-the-clock] work"); *Kilbourne v. Coca-Cola Co.*, 2015 WL

23 | 5117080 (S.D. Cal. July 29, 2015) (denying class certification; "even if a common issue

24 | exists, the Court finds individualized inquiries predominate;" "proof of off-the-clock

25 | liability would have to continue in an employee-by-employee fashion, demonstrating

26 | who worked off-the-clock"); *Howard v. CVS Caremark Corp.*, 2014 WL 7877404 at *11-

27 | 12 (C.D. Cal. Dec. 9, 2014) (denying class certification; "Court finds that Plaintiffs'

28 | question of whether the class members worked off-the-clock hours … is not likely to

7

68847327v.3

1   generate a common answer"; "where … proof of off-the-clock liability would have to

2   continue in an employee-by-employee fashion, class certification is inappropriate"); *Ortiz*

3   *v. CVS Caremark Corp.*, 2013 WL 6236743, at *10 (N.D. Cal. Dec. 2, 2013) (class

4   certification denied based on "individualized questions" where "the undisputed

5   evidence … do[es] not show whether the [work] was done on or off the clock").[3]

### 3.   Conflicting Testimony Requires Denial Of Class Certification

7       In our case, there are several layers of conflicting testimony as to whether bag

8   checks were conducted on the clock or off the clock.  As shown above, there is

9   conflicting testimony from Plaintiff's declarants—in their declarations, they often

10   attested that bag checks were off the clock, but subsequently admitted in their depositions

11   that bag checks were on the clock.  Also, there is conflicting testimony between

12   Plaintiff's declarants and Defendant's declarants—Plaintiff offered five declarants who

13   testified that bag checks were conducted off the clock, but Defendant offered 12

14   declarants who each testified that bag checks were conducted on the clock.  Given this

15   conflicting testimony, individualized issues predominate.[4]

---

[3] *Accord Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1052 (2012) (class
certification is unwarranted where the employer has a policy to pay for all time worked;
"proof of off-the-clock liability would have had to continue in an employee-by-employee
fashion, demonstrating who worked off the clock, how long they worked, and whether
[employer] knew or should have known of their work").

[4] *See Garcia v. Sun Pac. Farming Co-op, Inc.*, 359 F. App'x 724, 726 (9th Cir. 2009)
(class certification denied; "the record evidence—in particular, the conflicting employee
declarations submitted by each party—does not establish common wage and hour
practices, … but rather the '[in]consistent application of the wage and hour laws between
and among the various [employees].' …  It was well within the district court's discretion
to deny class certification on this basis."); *Figueroa v. Delta Galil USA, Inc.*, 2021 WL
1232695, at *5 (N.D. Cal. Mar. 30, 2021) (class certification denied based on conflicting
testimony; "[A]fter initially swearing to similar experiences, half of Figueroa's declarants
on this issue recanted in their depositions" while another "offered a quintessentially
individualized narrative"); *Hubbs*, 2017 WL 2304754 at *8 ("Defendants have submitted
declarations … [stating] that bag checks were generally on the clock" and "Plaintiffs
have submitted contrary declarations"); *Chavez v. AmeriGas Propane, Inc.*, 2015 WL
12859721 at *21 (C.D. Cal. Feb. 11, 2015) (class certification denied; "Indeed, because

8

68847327v.3

### 4.    Plaintiff's Failure To Show Classwide Harm Requires Denial Of Class Certification

At the very most, Plaintiff has submitted five declarations from disgruntled former employees who testified that they participated in bag checks off the clock—albeit on cross examination, they provided conflicting testimony on whether bag checks were on the clock.  Even if the testimony of Plaintiff's five declarants is credited as showing liability for those five individuals, it is not nearly enough to show classwide harm.

Plaintiff's expert Jeffrey Petersen testified that five declarations out of a potential class of 8,000 is not statistically significant and cannot be extrapolated to the class:

> Q.    Out of a class of 8,000, is the testimony of five people statistically significant?
>
> A.    No.
>
> Q.    And so these five declarations don't create a statistically significant conclusion that can be drawn to extrapolate to the entire class of over 8,000 people?
>
> A.    That's correct.

(Petersen Dep. 128:14-21.)  Given Plaintiff's own expert's admission that there is no statistically significant evidence of classwide harm, there can be no class certification.  A certified class cannot include individuals who suffered no injury.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021) ("If Plaintiffs' model indeed shows that more than one-fourth of the class may have suffered no injury at all, the district court cannot find by a preponderance of the evidence that

_____

of often conflicting testimony … claims like [plaintiff's] lack the commonality necessary for class certification"); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 507, 527 (E.D. Cal. 2014) ("conflicting and contrary evidence submitted by each side did not establish a common wage and hour practice"); *Soto*, 2013 WL 6844377, at *17, 19 (class certification denied; "Importantly, the evidence provided by Plaintiff and Defendant regarding a 'practice' … is directly in conflict. Previously, this Court noted, '[C]onflicting testimony poses a significant concern for managing [a] class action.' … [C]onflicting evidence concerning alleged wage-and-hour law violations defeats a finding of commonality for purposes of class certification;" "In light of the dissimilarities and conflicting testimony of putative class members, the Court is unable to find a contention 'capable of classwide resolution'") (internal citations omitted).

9

68847327v.3

1   'questions of law or fact common to class members predominate over any questions
2   affecting only individual members.'").[5]

### 5. Defendant's Subsequent Clarification Of Its Bag Check Policy Cannot Show Classwide Harm

Plaintiff argues that Defendant's bag check policy that existed prior to September 2018 is evidence of classwide harm, because Defendant later issued an updated policy that specifically states employees "must have bag checks conducted while clocked in for their shift." (Mot. 8:1-2.)  In Plaintiff's view, a clarification stating that bag checks must be conducted on the clock for all employees necessarily proves that the prior version of the policy provided for bag checks to be conducted off the clock for all employees.

Plaintiff is incorrect.  As Defendant's corporate witness explained, the language issued in September 2018 was merely to provide **additional** legal protection from these types of lawsuits, and it did **not** change Defendant's policy requiring bag checks to be conducted on the clock:

> Q.   Okay. And so my question is why was the policy updated in -- for Exhibit 25 -- around September 24th, 2018, to include the section and the procedure that the employees in California would need to have their bag checks conducted while clocked in?
>
> A.   So it was always that you would have to be clocked in for your bag check regardless. So in [Exhibit] 24 it might not have blatantly said it in the policy, but all of our policies say that all time work, all duties must be recorded and must be paid for. And why we added it, quite frankly, … there was a lot of companies getting sued because of the

---

[5] *Accord Dukes*, 564 U.S. at 350 (holding that commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury"); *Heredia*, 2020 WL 127489, at *5 (granting decertification because "the class includes employees who did not suffer any harm or injury"; "commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke"); *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 564 (N.D. Cal. 2016) ("where it appears there are 'a great many' such individuals, the class may not be ascertainable"); *Santos v. TWC Admin. LLC*, 2014 WL 12558009, at *11 (C.D. Cal. Aug. 4, 2014) ("A class is not ascertainable when the proposed definition includes individuals who were never injured by the defendant's conduct.").

10

fact that it didn't blatantly say it in the policy. So we then blatantly put it in the policy to even further protect us.

(Mimnaugh Dep. 141:9-22.)

As shown above, numerous employees testified that Defendant's policy and practice were to conduct bag checks on the clock prior to September 2018.  Further, numerous employees testified that the revisions to bag check policy in September 2018 did not change practice—it was merely a reiteration and confirmation that bag checks should be completed on the clock.  *See, e.g.*, Salas Decl. ¶ 14 ("In 2018, Carter's rolled out a written policy which stated that bag checks needed to be conducted on the clock. This written policy merely formalized the preexisting practice, which was to always conduct back checks on the clock."); Valdez Decl. ¶ 12 ("I recall in September 2018, Carter's updated its bag check policy, where it stated bag checks must be completed on the clock. To me, this was merely a clarification of the existing policy and practice to compensate employees for the time they spent on bag checks."); Atchley Decl. ¶ 7 ("When I was hired in May 2018, I received training through new hire onboarding and was told to stay clocked in while going through bag checks."); Castro Decl. ¶ 9 ("Based on my training and my interactions with other employees at the store, it is my understanding that bag checks have always been completed on the clock. I am not aware of any policy change on this issue.").

### D. Individualized Inquiries Preclude Class Certification Because Different Stores Had Different Procedures For Conducting Bag Checks

Plaintiff argues that employees could not go through bag checks on the clock, because Defendant required bag checks to be conducted at the front door, immediately before an employee exited the store, and there were no time clocks near the exits. Plaintiff argues that bag checks could not be conducted on the clock without mobile devices, and there were no mobile devices until October 30, 2017.  (Mot. 6:5-9.)

But mobile devices were not necessary for bag checks to be on the clock, because there were non-mobile devices that allowed employees to clock out after the bag check.

11

As Defendant's corporate witness explained, bag checks "can be performed anywhere because you're on the clock, and then the employee can walk away from the bag check to the device where they have to clock out; just depending on what device they are using to clock out and where that device is." (Mimnaugh Dep. 128:22-129:6.)  Defendant's corporate witness further explained that it was unnecessary for employees to have mobile devices to clock out because "our stores are so tiny that [the manager] would just visibly watch the person exit the store." (Mimnaugh Dep. 128:15-21.)

Indeed, cash registers or cashwraps were at the front of the store, so that employees could complete the bag checks at the front of the store and then clock out at the front of the store.  Niz Decl. ¶ 11 ("bag checks are usually conducted at the cash register because of its close proximity to the entrance/exit."); Gaze Decl. ¶ 10 ("bag checks are conducted at the cashwrap (i.e. the cash register)" and "my coworkers usually prefer to undergo the bag check by the cashwrap so they can clock out after the bag check is completed."); Atchley Decl. ¶ 8 ("bag checks are conducted at the register … partly because it is convenient for employees to clock out after the bag check is completed."); Nettleton Decl. ¶ 11 ("We … head to the register where we conduct a bag check on one another, and then clock out at the POS, and then leave the store."); Evans Decl. ¶ 9 ("Employees at my store conduct bag checks at the cash registers" which are located "only about three or four yards from the front door. So, after a bag check is completed, the exiting employee can clock out using one of the cash registers before leaving the store."); Ballesteros Decl. ¶ 10 ("Bag checks at the Fresno store are generally conducted at the register" which "is approximately ten feet from the front door.").

### E. Individualized Inquiries Preclude Class Certification Because There Was No Policy Or Practice Requiring Employees To Wait For A Manager Off The Clock Before Going Through A Bag Check

Plaintiff also argues that employees had to perform other duties off the clock, such as waiting for a manager to conduct the bag check.  Plaintiff contends that employees "typically would wait approximately five (5) minutes on average for a Security Check to be completed." (Mot. 7:24-25.)  However, as Plaintiff conceded in deposition, if a

manager was preoccupied with a customer, the employee could wait for the manager to become available, **while remaining on the clock**—"[i]f the manager was with a customer, then the employee could wait for the manager to be finished with the customer, have their bag inspected, punch out, and then leave." (Pl. Dep. 68:1-5.)

Crystal Zoblisien, a manager at two Pismo Beach stores, also testified that waiting time should be on the clock—"during that time when you were waiting for the manager to free up with the customer, you are still clocked in." (Zoblisien Dep. 53:16-19.)  She also testified that as a manager, she "never asked the employees to clock out and wait for [her] to become ready for the bag check." (Zoblisien Dep. 70:12-16.)  In other words, "[i]f an employee was waiting for [her] to become available for the bag check, that employee was expected to be on the clock." (Zoblisien Dep. 70:17-20.)

Other witnesses similarly testified that, if they had to wait for a manager to conduct the bag check, they were still on the clock.  *See, e.g.*, Pacheco Decl. ¶ 15 ("During this waiting time, the associate is clocked in and, on some occasions, may also provide assistance to the customer."); Ballesteros Decl. ¶ 15 ("The employee who wants to leave the store remains on the clock until a manager completes a bag check for them."); Evans Decl. ¶ 14 ("even if an employee has to wait for me or another manager to conduct the bag check, they are expected to remain on the clock."); Gaze Decl. ¶ 12 ("The employee … remains on the clock during the wait.").

### F.    Plaintiff's Case Authorities Are Distinguishable Because Defendant's Written Policy Does Not Mandate Off-The-Clock Security Checks

Plaintiff cites several cases where class certification was granted as to claims for unpaid work off the clock arising from bag checks. (Mot. 2:4-17.)  However, Plaintiff's cases are inapplicable—each of the cases cited by Plaintiff involved an employer's policy that explicitly required bag checks to be conducted off the clock.  Of course, Defendant in this case has never had such a policy. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 613-14 (C.D. Cal. 2015) (class was certified based on written policies and training materials requiring bag checks off the clock—*i.e.*, "As you are

68847327v.3

performing an exit inspection: 'Did you punch out for your shift?'" and "personal belongings should not be gathered until you are clocked out for the day"; based on these written policies, the court concluded that "the most reasonable reading of defendant's written exit inspection policy indicates that the employee must clock out before his or her bag is checked"); *Lao v. H&M Hennes & Mauritz, L.P.*, 2018 WL 3753708, at \*9 (N.D. Cal. Aug. 8, 2018) (class certified based on a uniform policy and practice that "security checks at the end of a shift are conducted after an employee clocks out"); *Rodriguez v. Nike Retail Servs.*, 2016 WL 8729923, at \*5, 7 (N.D. Cal. Aug. 19, 2016) (holding that class certification is appropriate because "Nike ha[d] a uniform policy of requiring employees to go through an exit inspection … while off the clock"); *Scott-George v. PVH Corp.,* 2015 WL 7353928, at \*5-6 (E.D. Cal. Nov. 20, 2015) (class certification was granted; employer's written policy required "bags be searched upon entering … the store," and the district court concluded there was not "a way to clock employees in at the entrance of the floor," so "any argument that there is no policy requiring off the clock searches is unpersuasive"); *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 521 (N.D. Cal. 2015) (concluding that "as a rule, employees received no compensation for the time involved in the searches"); *Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, at \*5 (N.D. Cal. Jan. 25, 2010) (the employer uniformly did "not compensate employees for time spent waiting for these [security] searches"); *Kurihara v. Best Buy Co.*, 2007 WL 2501698, at \*2, 10 (N.D. Cal. Aug. 30, 2007) ("plaintiff has provided substantial evidence of the existence of a company-wide policy whereby employees are subject to inspections, and not compensated for the time spent on those inspections").[6]

---

[6] Plaintiff also relies on *Bibo v. Fed. Express, Inc.*, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009), but that case did not involve bag checks. *Id.* at \*6 (alleged off-the-clock work included "servicing computers on trucks" and "providing employee benefits consulting services").

14

## III.   INDIVIDUALIZED ISSUES PREDOMINATE AND PRECLUDE CLASS CERTIFICATION ON THE MEAL PERIOD CLAIMS

### A.   Defendant Always Provided A Duty-Free Meal Period And All Security Checks Were Expected To Be Conducted Before The Meal Period

Plaintiff argues that the class certification is appropriate for the meal period claims because common question exists as to "whether the time the employee spent in a Security Check during a meal period while clocked out of Defendant's timekeeping system triggered Defendant's obligation to pay an hour of premium pay." (Mot. 17:23-27.)  In other words, Plaintiff claims employees did not receive a net 30-minute meal period due to time spent in bag checks.

However, Plaintiff has not identified any policy requiring employees to go through security checks **during** their meal periods.  To the contrary, Defendant's meal period policy stated "Meal periods **must** be no less than 30 minutes in duration and the employee must be completely relieved of all work duties during the meal period." (Pl. Dep. Ex. 13, p. 3.)  It is a violation of Defendant's meal period policy to conduct bag checks during a 30-minute meal period.  Thus, under Defendant's written policies, bag checks had to be conducted on the clock, **before** an employee clocked out for a meal period.

As Plaintiff conceded, bag checks were conducted on the clock, prior to an employee leaving the store for the meal period—"if an employee wanted to leave the store for a meal period, they could approach the manager and walk to the front door of the store, the manager could punch them out for the meal period, and then they could just walk out the door." (Pl. Dep. 66:4-9.)

Kristen Arena, a manager at the Orange store, testified that an off-the-clock bag check during a meal period would be considered an interrupted meal period and, therefore, is a violation of Defendant's meal period policy:

Q.   And so if somebody clocked out for a meal period and then had a bag check, that bag check would interfere with their meal period; right?

A.   Yes.

15

Q.    And that would be in direct violation of the company policy which said that the meal periods have to be at least 30 minutes, without any job duties taking place at all; right?

A.    Yes.

(Arena Dep. 68:5-12, 16.)  As Arena conceded, there is no way "to comply with the [meal period] policy and conduct a bag check off the clock." (Arena Dep. 71:13-15, 18.) Arena even admitted that "when [she was] doing bag checks off the clock, [she was] violating the company meal period policy." (Arena Dep. 72:18-21.)

### B.    Individualized Inquiries Predominate Because Most Employees Took Meal Periods Longer Than 35 Minutes And There Is No Record Showing Anyone Had A Meal Period Of Less Than 30 Minutes

Even if bag checks took place off the clock, there is no classwide evidence that employees were denied 30-minute meal periods.  Plaintiff argues that Defendant is strictly liable for meal period violations whenever an employee did not receive a full 30-minute meal period due to the alleged off-the-clock security checks. (Mot. 18:1-6.)  But the timekeeping records show that the average meal period was 35 minutes (Li Decl. ¶ 15), which allowed employees to have a net 30-minute meal period even if they had to complete the security check off the clock.

Several of Plaintiff's declarants admitted, when cross examined at deposition, that their meal periods were longer than 30 minutes.  Whitney Pearson, a manager at the Carlsbad store, testified that she "regularly took a longer unpaid meal period that's more than 30 minutes." (Pearson Dep. 29:6-9.)  Based on her estimation, Pearson testified that "on average, I would take about 35 minutes." (Pearson Dep. 29:13-15.)  Crystal Zoblisien, a manager at two Pismo Beach stores, also testified that she was "scheduled to receive a one-hour unpaid meal period." (Zoblisien Dep. 12:13-16.)  Based on the agreed-upon sample of time records for the potential class members, the average length of a meal period was 35 minutes.  (Li Decl. ¶ 15.)

Plaintiff has presented no evidence to show that bag checks routinely exceeded five minutes, thereby reducing the average 30-minute meal periods to less than 30

16

68847327v.3

minutes, on a classwide basis.  To the contrary, witnesses have testified that bag checks took a matter of seconds, and never exceeded five minutes.  Whitney Pearson, a manager at the Carlsbad store, testified that "the security inspection or the bag check entailed the opening of the bag or purse and a visual examination by another employee." (Pearson Dep. 36:21-24.)  Thus, the security inspection "took less than three seconds." (Pearson Dep. 38:22-23, 39:2-3.)[7] Crystal Zoblisien, a manager at two Pismo Beach stores, similarly explained that "[b]ecause the inspection on the bag check entailed the opening of the bag and followed by a visual inspection, … that would only took 2 to 3 seconds." (Zoblisien Dep. 31:18-25.)  As she further conceded, "there's no reason for any security check or bag check to take longer than 2, 3 seconds."  (Zoblisien Dep. 32:18-21.)[8]

To determine Defendant's liability, Plaintiff's expert admitted that he "would need to [know the] amount of time that the employee went through a bag check and whether that employee went through the bag check on the clock or off the clock and the amount of time that the employee spent on their meal period." (Gorlick Dep. 45:9-13, 16.)  However, Plaintiff's expert conceded that based on the time and payroll records he reviewed, he was "not able to determine who went off site during their meal period

---

[7] Pearson later provided conflicting testimony claiming that it "would be about 10 to 15 [seconds]" because "you have to look in each compartment" of the bag.  (Pearson Dep. 40:18-21, 40:25-41:5.)

[8] Defendant's declarants similarly confirmed that bag checks only took a few seconds. *See, e.g.*, Gaze Decl. ¶ 11 ("The bag check process is always on the clock and takes one to two seconds."); Wagner Decl. ¶ 15 ("The bag check is very quick and takes just a couple seconds."); Castro Decl. ¶ 11 ("The bag check takes no more than a second or two."); Pacheco Decl. ¶ 12 ("This whole process generally takes no more than two seconds."); Niz Decl. ¶ 12 ("On average, this whole bag check process takes about three seconds."); Nettleton Decl. ¶ 9 ("Bag checks generally take a matter of seconds, but the number of seconds it takes depends on the type of bag, including its size and number of pockets or compartments."); Ballesteros Decl. ¶ 14 ("This entire process takes only a few seconds and does not impede my ability to leave the store when I want."); Evans Decl. ¶ 12 ("The bag check process is simple" and "takes about three seconds on average."); Martinez Decl. ¶ 10 ("The bag check is a very quick process" and "takes less than five seconds.").

68847327v.3

1   and … who remained on site during their meal period." (Gorlick Dep. 51:14-19.)

2   Plaintiff's expert also cannot identify "any correlation between the employees taking

3   their meal period off site and the length of the meal period." (Gorlick Dep. 50:17-21.)

4   As Plaintiff's expert explained, "[e]ven if we assume that an employee took their meal

5   period off site 50 percent of the time, you still don't know whether that happened a

6   hundred percent of the time when the person took a meal period longer than 30 minutes."

7   (Gorlick Dep. 51:3-7, 10.)

8          Accordingly, individualized inquiries will be necessary to determine (1) did the

9   employee take an offsite meal period, (2) did that person leave with a bag, (3) did that

10  person go through a security check, (4) was the security check on the clock, (5) how

11  much time did it take to complete the bag check, (6) did the employee have to wait for a

12  bag check, (7) was the wait time on the clock, (8) was the security check on the clock,

13  (9) how long was the meal period, and (10) if the bag check was completed off the clock,

14  did the employee receive a net 30-minute meal period.  These individualized inquiries

15  must be examined on an employee-by-employee, shift-by-shift basis.

16         Plaintiff has not—and cannot—articulated a viable trial plan to determine which

17  employee received a meal period less than 30 minutes, from which store, during which

18  shift throughout the proposed class period.  Under these circumstances, class certification

19  is improper.  *See Lao*, 2018 WL 3753708, at *6 (class certification denied as to shortened

20  rest periods based on the need to conduct bag checks; noting that "there are no records to

21  show … how long the rest break lasted" and concluding that "Plaintiff has not established

22  that a classwide proceeding will generate common answers apt to drive the resolution of

23  Plaintiff's claims regarding rest breaks … because there is no evidence of a common

24  practice of conducting security checks in a manner that interferes with rest breaks").[9]

25

26  _____

27  [9] *Accord Ogiamien*, 2015 WL 773939, at *5 (class certification denied as to bag check
    theory because "individual inquiries are required to establish liability for each putative
28  class member such as … whether they left the store for breaks" and "if they left for
    breaks, if they did so with or without bags").

18

68847327v.3

## IV.   INDIVIDUALIZED ISSUES PREDOMINATE AND PRECLUDE CLASS CERTIFICATION ON THE REST PERIOD CLAIM

### A.   Defendant's Policy Permits Employees To Take Offsite Rest Periods

Plaintiff claims that Defendant did not provide compliant rest periods because it has a "requirement that employees may not leave the premises of the retail store unless permission is granted."  (Mot. 18:16-19.)  However, there is no "requirement" that employees must remain onsite during their rest periods, or that they must seek permission before leaving the store for their rest periods.  Instead, Defendant's rest period policy merely states that, as a good practice, "employees **should** ask management for permission to leave the store during a rest period."  (Pl. Dep., Ex. 13, p. 4) (emphasis added).

Defendant's written policy already contemplates that employees will take their rest periods offsite.  Under Defendant's bag check policy, "[e]mployees must present all bags … to be checked by the Manager … whenever exiting the store for any reason (**meal/rest period**, end of shift, etc.)." (Mimnaugh Dep., Ex. 22) (emphasis added).  Of course, this policy explicitly endorses offsite rest periods.  Crystal Zoblisien, a manager at two Pismo Beach stores, conceded that "[u]nder this bag check policy, Carter's contemplate[d] that employees are allowed to leave the store during their meal period or their rest breaks."  (Zoblisien Dep. 94:2-6.)

Even if there was a "requirement" to seek permission for an offsite rest period, the act of seeking permission necessarily means that permission may be granted or may be denied.  This means that every request for an offsite rest period requires individualized inquiries.  Indeed, Plaintiff has not presented any legal authority showing why a requirement for seeking permission is unlawful in itself, or worthy of class certification.

Plaintiff's citation to *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968 (1995), is directly on point.  In *Bono*, the Court held that an employer may have exercised sufficient "control" over its employees if it denies "an employee **from leaving the work place** during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes."  *Id.* at 975 (emphasis added).

68847327v.3

Although *Bono* held that requiring employees to remain onsite may be unlawful and worthy of class certification, the Court also held that requiring employees to make prior arrangements—or seek permission—to leave the worksite was not a violation of any rest period requirements:

> [T]he workers employed at Procter & Gamble could leave the worksite if they made prior arrangements to re-enter the plant. **Thus, those employees were not restricted to the worksite for meal periods and, therefore, did not remain subject to the employer's control.** Those facts, not before us in this action, are extremely significant.

*Id.* at 978 n.4 (emphasis added).  While *Bono* holds that a blanket policy prohibiting employees from leaving the premises is unlawful, it does not hold that a blanket policy requiring permission to leave is unlawful.  This distinction, as *Bono* noted, was "extremely significant." *Bono*, 32 Cal. App. 4th at 978 n.4.

> **B.     Individualized Inquiries Preclude Class Certification Because Managerial Discretion Necessarily Means Some Employees Were Permitted To Leave, While Others Were Not Permitted To Leave**

The nature of "permission" means that it is sometimes granted and sometimes denied.  Kristen Arena, a manager at the Orange store, testified that Defendant "gives managers discretion to decide how often to allow employees to leave the store for 15-minute rest periods." (Arena Dep. 21:7-10.)  Even under Plaintiff's theory of recovery, some managers may exercise their discretion to always permit offsite rest periods.  Some managers may exercise their discretion to sometimes permit offsite rest periods.  Some managers may exercise their discretion differently depending on the store they worked or a particular time within the proposed class period.

As Plaintiff explained, "every manager is different," each has "their own rules," and individualized inquiries are necessary on a manager-by-manager basis:

> Q.     It's just an individualized issue with each of the managers, right?
>
> A.     Correct, yes. I -- correct, yes. It's just on the individual management team on its own, depending on how that manager runs. I have no issue. I love the company. It's just the way the management runs, every manager is different. They have their own rules. They do stuff different.

20

68847327v.3

(Pl. Dep. 172:17-18, 20-25.)  Given that Plaintiff's theory of recovery requires individualized inquiries based on each manager's discretion, class certification is improper.  *See, e.g.*, *Hughes v. WinCo Foods*, 2012 WL 34483, at *6 (C.D. Cal. Jan. 4, 2012) (class certification denied where liability hinges on "managers' discretion over the timing and arrangement of the meal periods"); *Gonzalez v. Mall*, 281 F.R.D. 455, 462 (S.D. Cal. 2012) (denying class certification; individualized issues predominated because "Project Managers at each location have discretion" to "authorize and permit employees to take rest breaks."); *Flores v. Supervalu, Inc.*, 509 F. App'x 593, 594 (9th Cir. 2013) (class certification denied as to claims for meal and rest period violations; claims required "examination of 'a number of human factors and individual idiosyncrasies' having 'little to do with an overarching policy'").

### C.  Individualized Inquiries Predominate Because Virtually All Employees Were Granted Permission To Leave, And Many Employees Did Not Need To Seek Permission To Leave

#### 1.  There Is No Classwide Evidence That Employees Were Denied Permission To Leave The Store During Rest Periods

In our case, the evidentiary record overwhelmingly shows that employees were granted permission to leave the premises for rest periods.  Plaintiff admitted that as a manager, he never prevented anyone from leaving the store during a rest period:

Q.   And when you were a manager, you never prevented anyone from leaving the store during a rest break or meal break, right?

A.   Correct. I never -- never.

(Pl. Dep. 173:19-22.)  Plaintiff then admitted that he never "refuse[d] to approve an employee leaving the store during a rest period."  (Pl. Dep. 201:12-14.)[10]

Numerous other employees similarly testified that employees were allowed to go offsite during their rest breaks.  Pacheco Decl. ¶ 26 ("I always allow my coworkers to

---

[10] Defendant's corporate witness confirmed that she is not aware of any instance where employees were denied permission to leave the store for rest periods—"In the how many years I've been here -- 13 years -- I've never gotten one complaint where an employee's raised a complaint saying I was refused and not able to leave the store during my rest period. They have free will to leave the store."  (Mimnaugh Dep. 69:10-18.)

21

68847327v.3

leave the store when they are on rest breaks."); Martinez Decl. ¶¶ 20-21 ("a lot of coworkers go to get drinks, food or other refreshments at local stores like Target (which has a Starbucks inside) or Sprouts on their rest breaks …. Because of the coronavirus pandemic, more and more employees (including myself) have been leaving the store on their rest breaks."); Ballesteros Decl. ¶ 28 ("I personally observed many employees have preferred to spend time outside of the store during their rest breaks."); Salas Decl. ¶ 10 ("Because there is a Starbuck's nearby, many employees in our store like to grab a drink on their rest breaks. There is also a snack kiosk in the mall and employees will leave the store to go purchase a snack from the kiosk."); Gaze Decl. ¶ 22 ("I always allow coworkers to leave the store when they are on rest breaks."); Nettleton Decl. ¶ 21 ("Employees are free to leave the store on their rest periods, and they generally do so."); Niz Decl. ¶ 20 ("Employees on rest break at my stores have always been permitted to leave the store premises.").

Plaintiff's declarants also confirmed that employees were regularly permitted to leave the store during their rest periods.  Kristen Arena, a manager at the Orange store, testified that her employees would ask, "maybe once a week, to go off site for rest periods," and she "always granted them."  (Arena Dep. 112:22-25.)  Crystal Zoblisien, a manager at two Pismo Beach stores, observed that "some employees, in fact, did leave the store during their paid 15-minute rest break."  (Zoblisien Dep. 79:16-19.)

### 2. Most Employees Did Not Need To Seek Permission Before Leaving The Store For Their Rest Periods

In contrast, most managers never even required their employees to seek permission in the first place.  Whitney Pearson, a manager at the Carlsbad store, conceded at deposition that when she was a manager, she never required her employees to seek permission for taking an offsite rest period:

Q.     When you were the manager at the store, did you require your associates to ask permission before they take a rest break off-site?

A.     No. I only required them to submit to a bag check if they were taking a bag outside of the store.

68847327v.3

(Pearson Dep. 80:18-20; 80:24-81:1.)  To the extent some employees sought permission

to leave the store, Pearson testified that she always granted their permission:

> Q.    During your employment at Carter's …, did you ever deny any
>       employee's request for taking a rest break off-site?
>
> A.    No.
>
> Q.    Okay. So whenever an employee wanted to go off-site for a rest break,
>       you always allowed it?
>
> A.    Yes.

(Pearson Dep. 82:22-83:4.)  Another Plaintiff's declarant, Sabrina Damian, a manager at

the Canyon Springs store, conceded in deposition that her employees did not need to seek

permission from her before leaving the store for their rest periods because "[t]hey were

able to come and go as they please on their breaks."  (Damian Dep. 59:13-14.)  As

Damian further explained, she did not ask them for permission, but her employees, as a

"common courtesy," gave her a heads up whenever they left the store for their rest

periods, so she would know the employee's whereabouts in case of an emergency that

required a store-wide evacuation:

> No, I didn't ask them to ask for permission. […] I didn't even ask them to let
> me know what they were doing. They just out of good conscience would be
> like, I'm going to go get this really quick. That way, like, say an emergency
> comes and I'm looking for them, like we need to get out of the store or
> something, at least they would just give me the, what's the phrase I'm
> looking for, common courtesy of being like, hey, I'm going to go get
> something really quick. But I never had them ask me or I never had to give
> them, like, permission. They knew that, like, it's your break. You do with it
> as you please.

(Damian Dep. 63:2-20.) Numerous other employees similarly testified that permission

was not a "requirement" before going offsite for a rest break.  Atchley Decl. ¶ 20 ("I only

ask my employees to give me a heads up that they are leaving the store so that I can

conduct the bag check. Permission is not required."); Castro Decl. ¶ 21 ("Employees are

not required to obtain my permission to leave the store during rest breaks."); Martinez

Decl. ¶ 19 ("Employees have never needed to ask for permission to leave the store on rest

breaks."); Nettleton Decl. ¶ 25 ("Employees in our store … do not need permission to

take their rest periods or to take them outside store premises. They simply let me or another manager know they are leaving. This is not a requirement, but simply to keep us informed."); Wagner Decl. ¶ 26 ("Associates can leave the store when they are on rest breaks and do not require my permission or authorization to do so."); Salas Decl. ¶ 11 ("Employees have always been free to leave the store on their rest periods. They do not need to seek permission."); Niz Decl. ¶ 22 ("Employees have never been required to ask for permission before leaving the store on their rest break."); Ballesteros Decl. ¶ 27 ("I only ask my employees to state that they are leaving the store. This is not a requirement. Instead, it is intended to keep me informed and to make sure employees' rest breaks are undisturbed."); Evans Decl. ¶ 22 ("They don't need to obtain my permission, but they are expected to limit their breaks to 15 minutes."); Valdez Decl. ¶ 20 ("I never ask associates to seek permission before leaving, as long as they can get back to work by the end of the 15-minute break .… This helps me track and schedule rest periods for other people.").

### D. Individualized Issues Predominate As To Whether Employees Ever Sought To Leave The Premises For A Rest Period

Even if some employees did not leave the store for rest periods, individualized inquiries are still necessary to determine whether they wanted to leave or remain onsite. As a practical matter, some employees may not want to expend their rest periods leaving and returning to the store.

The decision in *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016), is illustrative. As the California Supreme Court noted, the length of a rest period might, by itself, restrict an employee from leaving the premises, even if the employer exerts no control during the rest period:

> [D]uring a rest period an employee generally can travel at most five minutes from a work post before returning to make it back on time. Thus, one would expect that employees will ordinarily have to remain on site or nearby. This constraint, which is of course common to all rest periods, is not sufficient to establish employer control.

*Id.* As the Court ultimately held, **requiring employees to "remain onsite or nearby" during a ten-minute break was "not sufficient to establish employer control" and**

24

1  **that such "practical limitations on an employee's movement" are "of course**
2  **common to all rest periods."** *Id.* (emphasis added).

3      Following *Augustus*, several courts have held that a policy requiring employees to
4  remain onsite during rest periods is "not sufficient to establish employer control." *See,*
5  *e.g.*, *Bowen v. Target Corp.*, 2020 WL 1931278, at *6-7 (C.D. Cal. Jan. 24, 2020)
6  (holding "a policy that prohibits employees from leaving the property during rest
7  periods—without more—'is not sufficient to establish employer control;'" "Plaintiffs'
8  allegations do not establish that Target's on-premises rest period policy prevented
9  Plaintiffs from 'tak[ing] care of other personal matters' any more than practical
10  limitations already imposed by the abbreviated length of rest periods."); *Ritenour v.*
11  *Carrington Mortg. Servs., LLC*, 2018 WL 5858658, at *7 (C.D. Cal. Sept. 12, 2018)
12  (holding that defendant's on-premises rest period policy was facially valid and legal;
13  "The California Supreme Court never stated that an employer cannot require an employee
14  to remain on the premises during a rest period."); *Hubbs v. Big Lots Stores, Inc.*, 2018
15  WL 5264141, at *5 (C.D. Cal. Mar. 16, 2018) (holding that 'an employer may require an
16  employee to remain 'on premises' during such rest periods"); *Bell v. Home Depot U.S.A.,*
17  *Inc.*, 2017 WL 1353779, at *2 (E.D. Cal. Apr. 11, 2017) (declaring defendant's argument
18  that *Augustus* implied on-premises rest periods were legal as "more persuasive and
19  accurate" than plaintiff's argument to the contrary).

20  **V.      CONCLUSION**
21      Based on the reasons stated above, class certification should be denied.

22  DATED: May 28, 2021                      Respectfully submitted,

23                                           SEYFARTH SHAW LLP

24
25                                           By: */s/ Leo Q. Li*
                                                Jon D. Meer
26                                              Leo Q .Li
                                                Romtin Parvaresh
27                                              Attorneys for Defendant
28

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION